601 So.2d 1355 (1992)
Alex SPOTT
v.
OTIS ELEVATOR COMPANY, et al.
No. 91-C-2522.
Supreme Court of Louisiana.
June 18, 1992.
Dissenting Opinion June 22, 1992.
Rehearing Denied September 3, 1992.
*1356 Frank Allen Bruno, Bruno & Bruno, New Orleans, for plaintiff-applicant.
Charles Edgar Cloutier, III, Richard Joseph Garvey, Jr., Christovich & Kearney, Thomas Edward Loehn, Boggs, Loehn & Rodrigue, New Orleans, for defendant-respondent.
Dissenting Opinion by Justice Dennis June 22, 1992.
COLE, Justice.
This suit involves a claim for damages resulting from personal injuries sustained by plaintiff Alex Spott in an elevator owned by Pelican Homestead & Savings Association and manufactured and serviced by Otis Elevator Company. The court of appeal affirmed the district court's dismissal of Spott's suit, holding no liability on the part of the defendants was proven. 592 So.2d 13. We granted certiorari to determine the correctness of the lower courts' decisions.[1]

FACTS
On the morning of April 20, 1987, Pro-Temporary Service dispatched its employee, *1357 Alex Spott, on an assignment to McGregor Printing Company. McGregor sent its own employee, Scott Colomb, with Spott to deliver a load of paper to Pelican Homestead in Jefferson Parish. The two men entered the building from a loading dock which leads to an elevator reserved strictly for freight after 9:00 a.m. They used this elevator to transport a pallet of computer paper from the first floor to the second. The paper weighed between 2000 and 2500 pounds, well within the elevator's 4500-pound capacity.
At trial, Colomb and Spott testified regarding an incident which occurred en route to the second floor. An Otis repairman assigned to Pelican, John Mandola, also testified.[2]
Colomb, who had been in this elevator several times before and was familiar with operating it on independent service,[3] testified that he pushed the button for the second floor and the elevator started going up, but made a sudden, bouncing stop before it reached its destination. Specifically, Colomb testified:
[I]t sounded like and felt like it caught something in the shaft and then it went down maybe a couple of feet, stopped real hard, jerked us real hard and after that we stayed in it the better part of a half hour until it just went down to the first floor and it opened up and after that it went right up to the second floor, no trouble.
Colomb tried pressing buttons to start the car but eventually gave up and the car, apparently on its own, began working normally again. According to Colomb, none of the paper, which was shrink-wrapped, fell from the pallet, and neither he nor Spott was thrown against the walls or to the floor. The dropping problem did not recur.[4]
Spott, who took the stand next, testified the elevator dropped four to five feet, a much more conservative estimate than the fifteen feet he posited in his deposition. Spott stated he had been leaning against the handrail when the elevator "jerked" and "it hit my back and then you know jerking movement it hurt my neck because it was like a snap, a forward snap you know." The day of the accident Spott went to a lawyer who referred him to a Dr. Jones whom Spott saw the next day. Spott complained of nausea and neck pain. Dr. Jones diagnosed the plaintiff as being bruised. Accordingly, the doctor gave him heat and pain treatments. Spott, bothered by occasional stiffness, continued seeing Dr. Jones for four months from April 21, 1987 until he was found to be asymptomatic and was discharged August 31, 1987.[5] Although the plaintiff did not call Dr. Jones to testify, his report and bill were admitted into evidence.[6]
On cross-examination, defense counsel emphasized discrepancies between Spott's account of the accident at trial and that in his deposition. In his deposition, Spott apparently stated that he and Colomb had loaded two pallets, not one, onto the elevator and that the elevator fell a couple of stories. Furthermore, he stated in his deposition that he was thrown about the elevator and that the paper fell off the pallet.
Also testifying, and the only expert witness called by either side, was John Mandola, a maintenance man employed by Otis for over thirty years. Mandola, who inspected Pelican's elevators regularly under a maintenance contract with Otis, was summoned *1358 to the building by Pelican at the time of the incident. However, by the time Mandola arrived, Spott and Colomb had already left, and the elvator was functioning normally. Mandola had inspected the elevator five days before the incident, as part of routine maintenance, and found it to be in proper operating condition. A thorough, post-incident examination of the elevator revealed no problems. Mandola testified that in over thirty years of working with elevators, he had no experience with one dropping.
Indeed, if the elevator had dropped, according to Mandola, an electrical switch would have been tripped, shutting off power to the elevator. Once the switch has been tripped, the elevator will not run again unless mechanically reset. Because the switch did not require mechanical resetting, Mandola concluded the elevator had not fallen. Moreover, if the power had shut off because of the tripped switch and the elevator had continued to fall, then a safety brake would have clamped the rails. Had this safety stop been activated, a manual reset again would have been necessary.
Mandola's explanation of the incident, and the only hypothesis put forward by anyone at trial, was that a safety device, the door interlock circuit, had been interrupted. He described the safety device as follows. Attached to the elevator car doors, which are electrically powered, is a cam which, when it is between the two rollers on the hoistway doors (the non-electric doors at each floor), will pull open the hoistway doors as the car doors open. When the car is not at a floor, the hoistway doors are prevented from opening by a mechanical interlock. The interlock is a small, dog-legged piece of metal which conducts an electrical current. The circuit must be completed for a car to run. This insures that the hoistway doors will not open onto the elevator shaft when the car is not in place. If the car is moving and the electrical current is broken, the power to the car will be shut off and the car will come to a sliding stop. Such a break in the current might occur if, for instance, debris on the car sill fell into the shaft, and broke the circuit as the car began to move. The same sort of stop would occur, according to Mandola, if someone pushed the emergency stop button in the elevator. Once a car has been stopped by the interruption of the door interlock circuit, the car will only begin running again by pressing the "door close" button.
Mandola theorized that a piece of the wooden pallet used by Spott and Colomb broke off and fell into the shaft, causing the interlock's electrical current to be temporarily interrupted. The pit of the elevator shaft apparently always contains trash and pieces of wood from pallets. Finally, Mandola testified that if there had been some mechanical problem with the elevator it would have been discoverable after the accident.
At the time of the incident, there was in effect an "Extended Coverage Maintenance" contract between Otis and Pelican which provided, with respect to control, that Otis does:
not assume possession or control of any part of the equipment but such remains yours [Pelican's] exclusively as the owner (or lessee) thereof. We shall not be liable for any loss, damage or delay due to any cause beyond our reasonable control including, but not limited to, acts of government, strikes, lockouts, fire, explosion, theft, floods, riot, civil commotion, war, malicious mischief or act of God. Under no circumstances shall we be liable for consequential damages.

I. PROCEDURE
Although the accident occurred in Jefferson Parish, Spott, on November 11, 1987, filed suit in Civil District Court for the Parish of Orleans, naming both Otis and Pelican as defendants. The petition mentions that Spott is domiciled in Orleans Parish, but, on the location of the defendants' registered agents or principal places of business, it is silent.[7] Spott served Otis within the one year prescriptive period but withheld service on Pelican. Otis answered the suit without objecting to venue. Pelican, on the other hand, was not served until May 1988, more than one year after the incident. Pelican then raised the declinatory exception contending venue was improper *1359 as to both Otis and itself. On November 14, 1988, the suit was transferred by joint consent judgment to the 24th Judicial District Court for the Parish of Jefferson where it was tried. In the consent judgment, the plaintiff concedes venue was improper as to Pelican in Orleans.
Pelican also raised the peremptory exception, averring the action against it had prescribed because suit was brought in an improper venue and Pelican was not served within a year of the incident. The district court overruled the exception but nonetheless rendered judgment in favor of both defendants. The court of appeal affirmed the district court's ruling on the peremptory exception. We disagree, in part, with those rulings.
Even assuming Orleans Parish is a parish of improper venue as to Otis, Spott served Otis within a year of the incident. Therefore, prescription was interrupted as to Otis. La.Civ.Code art. 3462[8]. Because Otis was ultimately found not liable, which result we affirm, the plaintiff cannot rely on La.Civ.Code art. 3503 nor on La.Civ. Code art. 2324(C).[9] These articles provide that interruption of prescription as to one solidary obligor interrupts prescription as to all other solidary obligors. Randall v. Feducia, 507 So.2d 1237, 1239 (La.1987).[10]
Because he cannot rely on articles 3503 and 2324(C), the plaintiff contends La.Code Civ.Proc. art. 73(B) is applicable. It provides:
A. An action against joint or solidary obligors may be brought in a parish of proper venue, under Article 42 only, as to any obligor who is made a defendant
...
B. If the action against this defendant is compromised prior to judgment, or dismissed after a trial on the merits, the venue shall remain proper as to the other defendants, unless the joinder was made for the sole purpose of establishing venue as to the other defendants. (Emphasis added.)
Here, Otis, allegedly the resident defendant, was dismissed after trial on the merits. Therefore, venue, if proper at the inception of the suit, would have remained proper as to the nonresident defendant, Pelican. The only problem with a straightforward *1360 application of the article and the cases under it,[11] is that the record contains no evidence of the location of Otis's primary, in-state place of business nor of its designated principal business establishment, as mandated to satisfy the requirement of La.Code Civ.Pro. art. 42(4).
The plaintiff contends Otis's failure to object to venue in Orleans, which constitutes a waiver of its right to object to venue, precludes Pelican from objecting to venue as well. We disagree. Pelican filed a timely exception of improper venue and did not waive its objection to venue. Otis's failure to object to venue did not affect Pelican's right to object to venue over either defendant. Habig v. Popeye's, Inc., 553 So.2d 963, 966 (La.App. 4th Cir.1989) (holding, first, that waiver of venue by one defendant does not preclude another defendant from objecting to venue and, second, that waiver of venue does not make improper venue proper); Gelpi v. Ben Development Co., 327 So.2d 485, 488 (La.App. 4th Cir.1976). Therefore, assuming venue was improper in Orleans as to Otis, Otis's waiver of venue did not make venue proper as to Pelican.
Because the plaintiff's waiver argument fails, the question becomes whether the plaintiff is entitled to rely on La.Code Civ. Proc. art. 73(B), predicated on art. 73(A), requiring the action to be brought in a parish of proper venue, under article 42 only, as to any defendant. The plaintiff did not allege facts in the petition which indicate venue was proper as to Otis in Orleans. Moreover, the plaintiff adduced no evidence that Orleans was a parish of proper venue as to either defendant. The lack of evidence is at least partially due to the action's having been transferred by joint consent to Jefferson Parish.
In Hawthorne Oil & Gas Corp. v. Continental Oil Co., 377 So.2d 285 (La.1979), this Court held that unless a plaintiff shows its action comes clearly within one or more of the exceptions provided in La. Code Civ.Proc. arts. 71 through 83, the exception of improper venue must be maintained. Id. at 287. See also Parker v. Parker, 432 So.2d 1010 (La.App. 1st Cir. 1983); Glover v. Mayer, 209 La. 599, 25 So.2d 242 (1946) (the petition did not set forth facts sufficient to establish the existence of a partnership; therefore, plaintiff held not to have brought himself squarely within the venue exception for partnerships); Fourth Jefferson Drainage Dist. v. New Orleans, 203 La. 670, 14 So.2d 482 (1943). Glover and Fourth Jefferson Drainage District were decided under Code of Practice article 162.[12]
Article 73(B) is an extremely unusual exception to the general rule that suit against a defendant ultimately found not to be liable does not interrupt prescription as to other defendants who, as a result of the timely sued defendant's dismissal, cannot be the solidary obligors of the dismissed defendant. The jurisprudence on amending petitions after the prescriptive period to name additional defendants, though not directly on point, lends some guidance here. In Scott v. Burden, 527 So.2d 468 (La.App. 5th Cir.1988), the court held prescription did not bar a suit against a late-named defendant sufficiently alleged to be a solidary obligor of a timely sued defendant. The court noted, however, *1361 "[i]f, during subsequent proceedings, it is shown that solidary liability does not exist, an exception of prescription could be filed again, so appellee's rights are not hurt by our ruling at this time." Id. at 470. Thus, if ultimately the timely sued defendant is found not liable, the suit as to the latenamed defendant could be dismissed on the basis of prescription. Pearson v. Hartford Accident & Indemnity Co., 281 So.2d 724, 726 (La.1973); Provident Life and Accident Ins. Co. v. Turner, 582 So.2d 250, 254 (La.App. 1st Cir.1991).
The issue in this regard is who had the burden of proving whether venue was proper as to Otis. Generally, the party raising the peremptory exception, urging prescription, bears the burden of proof. New Orleans v. Elms, 566 So.2d 626 (La. 1990); Langlinais v. Guillotte, 407 So.2d 1215 (La.1981). This is the rule unless prescription is evident from the face of the pleadings, in which case the plaintiff bears the burden of showing the action has not prescribed. Lake Providence Equipment Co. v. Tallulah Production Credit Association, 257 La. 104, 241 So.2d 506 (La.1970).
We hold that Pelican carried its burden of proof when it established two things: the plaintiff filed suit in a parish of improper venue as to Pelican and did not serve Pelican within the prescriptive period. Having made out a prima facie case of prescription, Pelican was entitled to have its peremptory exception maintained unless the plaintiff could show the interruption or suspension of prescription. Chauser v. Babin, 412 So.2d 1005 (La.1982).[13] In this case, the plaintiff had to show La.Code Civ.Pro. art. 73's requirement of suing a defendant in a parish of proper venue, under La.Code Civ.Pro. art. 42 only, was met, i.e., that Orleans was a parish of proper venue as to Otis.
Given the enormity of the advantage bestowed on plaintiffs by article 73, requiring plaintiff to bring himself squarely within article 73 does not seem an undue burden. In fact, plaintiff could simply have alleged in his petition that Otis's principal place of business was in Orleans. Glover, supra, 25 So.2d at 243. Because the plaintiff failed to establish Orleans was a proper venue under article 73, the suit against Pelican prescribed and it is unnecessary to reach the merits against Pelican. In sum, we find Spott is not entitled to rely on article 73 because he failed to bring himself within that exception to the general venue rule.
Having erroneously disposed of the convoluted procedural questions, the trial court, reached the merits. It held: "Otis discharged their [sic] duty by undertaking a program of preventative maintenance of the elevator involving regular inspection, examination, adjustment and repair of the machine." On appeal, Spott argued for the application of res ipsa loquitur and strict liability. The court of appeal affirmed, finding Spott had proved neither negligence nor a defect and res ipsa loquitur was not applicable.

II. LIABILITY OF OTIS

A. Negligence
The fountainhead of negligence in Louisiana can be found in two articles in the Louisiana Civil Code. La.Civ.Code art. 2315 provides in part:
Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.
La.Civ.Code art. 2316 states:
Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill.
These articles have spawned the duty-risk analysis. Dixie Drive it Yourself System of New Orleans Co. v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962). This Court recently reiterated what a plaintiff must establish for liability based on negligence to attach:
(1) The conduct in question was a cause in fact of the resultant harm;
(2) The defendant owed a duty to plaintiff;
(3) The duty owed was breached; and

*1362 (4) The risk or harm caused was within the scope of the breached duty.
Fox v. Board of Supervisors of Louisiana State University, 576 So.2d 978, 981 (La. 1991).
Elevator cases, like escalator cases, add another dimension to the duty-risk analysis. Because parties connected with elevators have been likened to common carriers, the standard of care must be considered in such cases.

B. Standard of Care Required of Repairers
We granted this writ, in part, to consider a question pretermitted in Rosell v. ESCO, 549 So.2d 840, 843 (La.1989), namely, whether repairers ought to be held to the same high standard of care to which owners are held. It was not necessary for us to resolve the question there because under either standard, the common carrier or the reasonable person, the elevator maintenance firm would be liable. The Rosell elevator was in such a state of disrepair, as testified to by several of the building's employees, that a reasonable repair person should have discovered and remedied the defect. Id. This case is quite different. There were no reports of the elevator having malfunctioned in this way beforehand, nor any after. Therefore, even if we were to hold Otis to a higher standard of care, there is not in the record even the most meager evidence which would tend to show negligence on its part. Otis had a duty, under its contract with Pelican, to inspect and maintain the elevator. By all accounts, Otis did so. Moreover, as noted above, the explanation given by the repairman Mandola indicates that the accident occurred, not as a result of negligence, but rather as a result of the safety interlock's functioning normally. Hence, once again we are constrained to pretermit the question, because, under either standard, the result would be the same: liability on the basis of negligence would not attach to Otis.

C. Res Ipsa Loquitur
The plaintiff contends res ipsa loquitur obtains in this case. Res ipsa is a rule of circumstantial evidence which allows a court to infer negligence on the part of the defendant if the facts indicate the defendant's negligence, more probably than not, caused the injury. Cangelosi v. Our Lady of the Lake Regional Medical Center, 564 So.2d 654, 664 (La.1990), on rehearing; Montgomery v. Opelousas General Hospital, 540 So.2d 312, 319 (La. 1989). Spott argues that the elevator's falling a few feet and stopping constitutes such an unusual occurrence that the inference should be raised. The court of appeal held the doctrine was not applicable because the plaintiff failed to prove the negligence of the defendants, more probably than not, caused the accident.
Res ipsa loquitur, as "a qualification of the general rule that negligence is not to be presumed," must be sparingly applied. Day v. National U.S. Radiator Corp., 241 La. 288, 128 So.2d 660, 665 (1961). Generally, it obtains when three requirements are met: 1) the circumstances surrounding the accident are so unusual that, in the absence of other pertinent evidence, there is an inference of negligence on the part of the defendant; 2) the defendant had exclusive control over the thing causing the injury; and 3) the circumstances are such that the only reasonable and fair conclusion is that the accident was due to a breach of duty on defendant's part. Cf. Wilson v. Hibernia Nat. Bank, 517 So.2d 1206, 1208 (La.App. 4th Cir.1987), writ denied, 520 So.2d 425 (1988) (in which res ipsa loquitur was not applied), citing Boudreaux v. American Ins. Co., 262 La. 721, 264 So.2d 621 (1972), on rehearing. The second requirement, that the defendant have exclusive control over the thing, has not, in our jurisprudence, been strictly applied. Day, supra, 128 So.2d at 664. Indeed, it is satisfied if the circumstances indicate that it is more probable than not that the defendant caused the accident and other plausible explanations do not appear to be the probable cause of the accident. Smith v. State, 523 So.2d 815, 822 (La. 1988). The plaintiff, of course, bears the initial burden of proof. Brown v. Otis Elevator Co., 535 So.2d 525, 527 (La.App. 4th Cir.1988).
*1363 Although res ipsa may have been properly invoked in this case, its invocation alone does not carry the day because, as noted above, Otis's explanation of the accident sufficiently rebutted any presumption of negligence.[14] Rather, Mandola's hypothesis points to a possibility of a defect in the elevator itself, which brings us to the final theory of recovery urged on appeal, strict liability.

D. Strict Liability
The plaintiff contends both defendants are strictly liable under La.Civ.Code art. 2317, which provides in part:
We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody.
To recover under this article a plaintiff must prove he was injured by a thing, the thing was in the defendant's custody, there was a vice or defect creating an unreasonable risk of harm in the thing, and the injured person's damage arose from such a defect. Ross v. La Coste de Monterville, 502 So.2d 1026, 1028 (La.1987).
Spott has proven he was injured by a thing, the elevator. Hence, he must next prove the defendant had custody or "garde" of the thing. Otis strongly rejects the notion that it, as repairer, has garde. This Court has defined "garde" as:
the obligation imposed by law on the proprietor of a thing, or on one who avails himself of it, to prevent it from causing damage to others. The things in one's care are those things to which one bears such a relationship as to have the right of direction and control over them, and to draw some kind of benefit from them. Loescher v. Parr, [324 So.2d 441, 449 (La.1975)] (quoting Verlander, We Are Responsible ... 2 Tulane Civil Law Forum, No. 2, p. 64 (1974)).
King v. Louviere, 543 So.2d 1327, 1329 (La.1989). On the question of Otis's garde, the plaintiff suggests we follow Coleman v. Otis Elevator Co., 582 So.2d 341 (La. App. 4th Cir.1991), in which the court held Otis had garde. Spott relies on Doughty v. Insured Lloyds Ins. Co., 576 So.2d 461 (La.1991), which held the owner's presumed garde may be rebutted. The plaintiff asserts Otis had control over the elevator to the exclusion of Pelican and, therefore, had garde.
The plaintiff's contention is without merit in this case. Pelican is the primary party benefitting from the elevators on its premises. Moreover, the facts in Coleman are distinguishable. In Coleman, Otis hired an employee to work forty hours a week at Charity Hospital to upgrade and to maintain the hospital's forty-eight elevators. Hence, Otis had garde of the elevators, the Otis employee being physically on the premises full time. Consequently, on the peculiar facts of Coleman, the court of appeal's determination that Otis had garde was sound. In this case, however, an Otis employee visited Pelican only weekly for a brief period of time. Moreover, a service contract by itself does not create garde. Hunt v. City Stores, Inc., 387 So.2d 585, 589 (La.1980) (construing a service contract provision with language identical to that in this case, we found the store owner was the sole custodian of the escalator); see also Brown, supra, 535 So.2d at 527. The service contract in this case, in fact, specifically provides that Pelican retains control of the elevator. Because we find Otis did not have garde of the elevator, Otis cannot be found strictly liable.

E. Products Liability
Finally, Spott's petition alleges, inter alia, that Otis is liable because the elevator was defectively designed and bore no warnings. However, the plaintiff offered no proof of any kind relative to a products liability claim.[15] Thus, while we *1364 might entertain any patent products claim, we give the theory short shrift in light of the lack of evidence. The elevator in this case was manufactured by Otis. Therefore, Otis could be liable if the elevator, when it left the manufacturer's hands, was unreasonably dangerous to normal use. Bloxom v. Bloxom, 512 So.2d 839, 843 (La. 1987); Brown v. Sears, 514 So.2d 439, 444 (La.1987); Halphen v. Johns-Manville Sales Corp., 484 So.2d 110 (La.1986); Hunt, supra. This case is distinguishable, however, from those cases in which children's hands and feet were caught in escalators. The design defect in escalators was a nationally recognized problem in the 1970's. Indeed, it was referred to as the "tennis shoe phenomenon."[16] It is also distinguishable from McCoy v. Otis Elevator Co., 546 So.2d 229 (La.App. 2d Cir.1989) (convenience for loading of elevator without inside doors is not outweighed by the significant risk of severe injury.)
Defects are not presumed to be present by the mere happening of an accident. Broussard v. Pennsylvania Millers Mutual Ins. Co., 406 So.2d 574, 576 (La. 1981). No evidence whatsoever was presented in this case with respect to any design, installation, or operational defects. Accordingly, we hold Otis is not liable as a manufacturer. Davis v. D.H. Holmes, Ltd., 359 So.2d 743 (La.App. 4th Cir.1978). Indeed, at oral argument plaintiff's counsel conceded they were not suing on the basis of products liability.

DECREE
For the reasons assigned, we affirm the lower courts' decisions dismissing the plaintiff's suit, agreeing no liability was proven as to Otis Elevator Company and finding the action had prescribed as to Pelican Homestead and Savings Association.
RESULT AFFIRMED.
CALOGERO, C.J., concurs and assigns reasons.
DENNIS, J., dissents with reasons.
CALOGERO, Chief Justice, concurring.
I understand the majority opinion to conclude that Otis is not liable because there was no proof of fault on its part, and that Pelican's liability need not be addressed because the exception of prescription is meritorious. I agree that prescription is not interrupted by a timely filed suit against a co-defendant later exonerated (i.e., the co-defendant is not a solidary obligor because found to be not liable) and, for this reason, the prescription exception is properly maintained.
Accordingly, I concur.
DENNIS, Justice, dissenting.
I respectfully dissent.
On the record before this court it is impossible to say that plaintiff's action against Pelican has prescribed. Because the trial court incorrectly treated the issue as a question of law and overruled the exception of venue without taking evidence, the true facts relevant to this issue do not appear in the record. The majority opinion concedes as much but creates a new judge-made rule of law that the burden of proof is on the plaintiff in this novel situation, applies the rule retroactively, and holds that venue was not proper because the plaintiff did not have the perspicacity to put on his evidence even after the trial court had ruled in his favor.
If evidence had been taken on the venue question, it is possible that the plaintiff could have shown that his case had not prescribed against Pelican based on either of two theories. First, if venue was proper for plaintiff's suit against Otis, the fact that Otis was later determined not to be solidarily liable with Pelican, would not destroy the propriety of the venue as to Pelican. La.C.C.P. art. 73(B). If the venue was proper as to the suit against Pelican in Orleans, the timeliness of the commencement of action against Pelican in this competent *1365 venue would have interrupted prescription regardless of the failure to serve Pelican timely. La.C.C. art. 3462.
Second, if the timely service upon Otis also constituted service upon Pelican, prescription would have been interrupted on the action against Pelican, regardless of whether venue was proper as to that action. La.C.C. art. 3462. Had the plaintiff been allowed to introduce evidence on this phase of the prescription question he may have been able to show an interruption of prescription supported in the line of cases represented by Lunkin v. Triangle Farms, Inc., 208 La. 538, 23 So.2d 209 (1945). As Justice Tate observed:
"In these cases, the proper person was not served, but nevertheless prescription was held to be interrupted because service was made upon some closely related person or entity, sufficient to give notice to the true defendant that the judicial claim had been brought."
* * * * * *
"The essence of the interruption of prescription is notice, either constructively by filing if in the proper venue (as permitted by La.R.S. 9:5501), or else by actual service of the citation on or before the last day of the prescriptive period, or upon the first legal day thereafter, if the last day is a legal holiday."
Conner v. Continental Southern Lines, Inc., 294 So.2d 485 (La.1974) (Tate, J., dissenting). See also Findley v. City of Baton Rouge, 570 So.2d 1168, 1170 (La.1990) (While designed to protect a defendant against prejudice from lack of notification of a claim within the period of limitation, prescriptive statutes are not designed to protect a defendant against non-prejudicial pleading mistakes that his opponent makes in filing the claim within the period.); Ray v. Alexandria Mall, 434 So.2d 1083 (La. 1983).
In the present case, the sketchily represented facts on this issue are that suit was timely filed and served on Otis, there was an ongoing contractual relationship between Otis and Pelican with respect to the maintenance of Pelican's allegedly defective elevator that caused the damage, and suit was brought timely against Pelican but service was withheld pursuant to an agreement between plaintiff's counsel and an adjuster for Pelican, Irvin Breaux. Thus, it appears that Pelican, which was also sued timely, had actual notice and was in no way prejudiced by the pleading mistakes of the plaintiff.
For the foregoing reasons, this case is analogous to one in which the peremptory exception has been pleaded after the trial of the case. The plaintiff has been deprived of any real opportunity to show with evidence that his case against Pelican has not prescribed. The plaintiff has been deprived of his day in court on this issue by the combination of the trial judge's premature ruling without taking evidence and this court's retroactive imposition of a burden of proof that plaintiff could not have foreseen he had to carry. Consequently, under the principle of La.C.C.P. art. 929 and in order to render a judgment that is just, legal and proper, La.C.C.P. art. 2164, this court should reverse the judgment in favor of Pelican and remand the case to the trial court so as to permit the plaintiff to present evidence on the exception.
Moreover, I cannot agree with another judge-made rule that the majority opinion creates: "Waiver of venue does not render improper venue proper." First, it is troubling to see the majority of the supreme court of a state with a civil law tradition make such a sweeping statement without demonstrating how it is justified as an interpretation of the Code of Civil Procedure. Second, because the majority does not reason from the code, the rule is of uncertain scope and meaning. Does the majority mean by its rule that one solidary obligor's waiver of his objection as to improper venue never operates as such a waiver by other solidary obligors? Will this be the result even if the other solidary obligors had actual notice of the lawsuit and either expressly or tacitly consented to the waiver? Or does this rule simply mean that one defendant's waiver of an objection as to improper venue does not operate as a waiver as to other defendants not bound solidarily with him? If so, again, what if the other defendants acquiesce in the waiver after having received actual or legal notice? In the present case, Pelican may have avoided acquiescence in Otis's waiver of any objection it may have had as to *1366 improper venue, because Pelican obtained a consent judgment that venue was improper as to Pelican in Orleans and the case would be transferred to Jefferson. In any event, regardless of the merit of the majority's holding on this point, the rule or holding should be cured of its obvious overbreadth by a more careful restatement by this court on rehearing or in future cases or, in lieu thereof, by the legislature in future legislation.
With respect to the question of whether Otis should be held liable for plaintiff's injury, the majority concludes first that the accident resulted from the normal functioning of the elevator's safety interlock and not from anyone's negligence and implicitly not from any defect in the elevator. Nevertheless, the majority opinion continues with a discussion of res ipsa, garde and products liability. Clearly, therefore, this discussion falls squarely within every definition of obiter dictum, e.g., "a statement in a judicial opinion that could have been deleted without seriously impairing the analytical foundations of the holdingthat, being peripheral, may not have received the full and careful consideration of the court that uttered it." Sarnoff v. American Home Products Corp., 798 F.2d 1075, 1084 (7th Cir.1986) (Posner, J.) Therefore, because the majority's discussion of these issues was unnecessary to its holding and should have no precedential value, it is not desirable to expend further time or resources in evaluating that discussion. In passing, however, I would like to add my own dictum that it seems erroneous and incongruous to conclude that an elevator company which holds itself out as an expert manufacturer and maintainer of elevators, assumes an obligation to maintain an elevator so that it will be safe for use by the public and is evidently in the best position of anyone to inspect for, detect and correct defects in the elevator, does not have the garde of the elevator for these purposes under our law. See King v. Louviere, 543 So.2d 1327 (La.1989); Loescher v. Parr, 324 So.2d 441 (La.1975); Coleman v. Otis Elevator Co., 582 So.2d 341 (La. App. 4th Cir.1991).

On Rehearing
LEMMON, Justice, Concurring in Denial of Application for Rehearing.
When venue is proper as to one defendant alleged to be a solidary obligor under La.Code Civ.Proc. art. 73, venue remains proper as to all joined defendants even though the defendant as to whom venue was proper is dismissed after trial on the merits.
Here, venue was not shown to be proper as to either defendant alleged to be a solidary obligor. While the venue exception filed by Pelican was never tried because the parties consented to a transfer of venue, plaintiff did file a brief in opposition to the exception of venue. In that brief plaintiff never suggested that venue was proper as to Otis. Indeed, apparently realizing that venue was improper as to Otis, plaintiff argued solely that Otis' waiver of its objection to venue served to waive Pelican's objection that venue was improper as to both.[1] I therefore cannot accept plaintiff's argument that he did not have the opportunity to argue and prove that venue was proper as to Otis.
NOTES
[1] 590 So.2d 580 (La.1992).
[2] The only other person to testify was an employee of Pelican, who testified only that she called Otis to the scene.
[3] To operate an elevator on independent service, it is necessary to push the "door close" button until the elevator is in progress.
[4] Colomb, too, had some injuries from the accident but did not file suit against anyone. His employer's worker's compensation carrier, Hartford Accident and Indemnity, which paid the $463.00 medical bill, filed a subrogation suit in first city court, but agreed to be bound by the Spott litigation.
[5] The plaintiff testified that he tried to obtain work as early as two weeks after the accident but found nothing until the end of October when he landed a job building scaffolding.
[6] The evidence verifies that Spott was treated for four months for cervical and lumbar strain at a cost of $900.00.
[7] The petition states only that Otis is a foreign corporation authorized to do and doing business in Louisiana and that Pelican is a domestic corporation authorized to do and doing business in Louisiana. Thus, La.Code Civ.Pro. art. 42(2) and (4) are implicated. Article 42 provides:

The general rules of venue are that an action against:
(2) A domestic corporation ... shall be brought in the parish where its registered office is located....
(4) A foreign corporation licensed to do business in this state shall be brought in the parish where its primary place of business in the state is located or in the parish designated as its principal business establishment in its application to do business in the state.
The application does not state where Otis's primary place of business in the state is located nor which parish was designated as its principal business establishment in its application to do business.
[8] The article provides in part:

Prescription is interrupted when ... the obligee commences action against the obligor, in a court of competent jurisdiction and venue. If action is commenced in an incompetent court, or in an improper venue, prescription is interrupted only as to a defendant served by process within the prescriptive period.
[9] Article 3503 provides in pertinent part:

When prescription is interrupted against a solidary obligor, the interruption is effective against all solidary obligors and their successors.
Similarly, article 2324(C) provides:
Interruption of prescription against one joint tortfeasor, whether the obligation is considered joint and divisible or solidary, is effective against all joint tortfeasors.
[10] In Randall, the plaintiff timely sued two defendants, Feducia and his insurer. These defendants filed a third party demand against the City of Shreveport more than a year after the accident but within the 90 days allowed by Code Civ.Proc. art. 1067. The plaintiff then amended its petition naming the third party defendant as a defendant. We held plaintiff was barred by prescription from so amending its petition because article 1067 was not designed to benefit plaintiffs. Rather it was meant to allow defendants sued at or near the end of a prescriptive period to bring in other parties.

We noted in Randall the plaintiff not only may not rely on La.Code Civ.Proc. art. 1067, but likewise may not rely on La.Civil Code article 3503 because the timely sued defendant was held not liable. Id. at 1239. Similarly, the plaintiff may not rely on Civil Code article 2324, as the trial court mistakenly did here. Vicknair v. Hibernia Bldg. Corp., 479 So.2d 904, 907 (La. 1985), on remand, 482 So.2d 95 (La.App. 4th Cir.1986).
[11] See, e.g., Riess v. Abshire, 570 So.2d 195 (La. App. 5th Cir.1990), writ denied, 576 So.2d 32 (1991); Sea Tang Fisheries, Inc. v. You'll See Sea Foods, Inc., 569 So.2d 992 (La.App. 1st Cir.1990), writ denied, 572 So.2d 89 (1991); Reeves v. Dixie Brick, Inc., 403 So.2d 792, 795 (La.App.2d Cir. 1981). The courts of appeal correctly interpret art. 73 as not requiring solidarity to be shown at the end of trial. Comment (b) to that article states: "The second paragraph of the above article overturns the principle of the cited cases in so far as compromise or dismissal after trial is concerned." Among the "cited cases" is Gordon v. Bates-Crumley Chevrolet Co., 182 La. 795, 162 So. 624 (1935), in which suit was dismissed as to the resident defendant after trial on the merits on the ground that he was not guilty of negligence.
[12] Article 162 of the 1870 Code of Practice provided:

It is a general rule in civil matters that one must be sued before his own judge, that is to say, before the judge having jurisdiction over the place where he has his domicile or residence, and shall not be permitted to elect any other domicile or residence for the purpose of being sued, but this rule is subject to those exceptions expressly provided for by law.
This article was replaced in part by the more detailed La.Code Civ.Proc. art. 42, Acts 1961, No. 23, § 1.
[13] Chauser dealt with the interruption of prescription on a promissory note, but the principle is the same.
[14] Cases in which res ipsa applies are no different from many other negligence cases, as noted scholar Wex Malone once pointed out. What distinguishes them is merely "the fact that the occurrence of the accident constitutes the given fact group from which the inference of negligence is drawn." Malone, Res Ipsa Loquitur and Proof by InferenceA Discussion of the Louisiana Cases, 4 La.L.Rev. 70, 72 (1941). Accordingly, it is often said that an "unusual occurrence" warrants an application of res ipsa loquitur.
[15] Pre-act products liability was in effect at the time this cause of action arose. Gilboy v. American Tobacco Co., 582 So.2d 1263 (La.1991), held the Louisiana Products Liability Act, La.R.S. 9:2800.51, et seq., effective September 1, 1988, is not retroactive. Id. at 1264.
[16] See Note, TortsNo Defense for the Manufacturer The Supreme Court of Kentucky Restricts the Shifting Responsibility Defense in Strict Products Liability CasesMontgomery Elevator Co. v. McCullough, 676 S.W.2d 776 (Ky.1984), 12 N.Ky. L.Rev. 347 (1985), for a discussion of this wellknown escalator defect and the reaction by the industry and the courts.
[1] The majority properly (although perhaps too broadly) rejected this argument.