620 So.2d 497 (1993)
Leon JOLLY
v.
OTIS ELEVATOR COMPANY and Orleans Parish Criminal Sheriff, Charles Foti, Jr.
No. 92-CA-2494.
Court of Appeal of Louisiana, Fourth Circuit.
June 15, 1993.
*498 John K. Leach, Paige F. Rosato, Christovich & Kearney, New Orleans, for defendant/appellant.
Richard L. Root, New Orleans, for plaintiff/appellant.
T. Allen Usry, Maureen Blackburn Jennings, Catherine A. Mills, Metairie, for defendant/appellee.
Before CIACCIO, LOBRANO and LANDRIEU, JJ.
CIACCIO, Judge.
In this personal injury case, the trial judge rendered judgment in favor of plaintiff, Leon Jolly, awarding him $5,560.00 for injuries he sustained while riding in an elevator. Defendant, Otis Elevator Company (Otis), and plaintiff appeal.
In January of 1990, plaintiff was incarcerated at the Community Correctional Center (CCC) in Orleans Parish. The CCC, owned by the City of New Orleans, is maintained and operated as a penal facility by the Orleans Parish Criminal Sheriff's Office under the direction of Sheriff Charles C. Foti, Jr.
On January 11, 1990, plaintiff, four other inmates and two sheriff's deputies boarded elevator P-1 on the first floor of the CCC with two or three food racks. Plaintiff was standing between the elevator car door and one of the food racks. As the elevator proceeded to the basement, it malfunctioned and stopped abruptly about eighteen inches from the basement floor, trapping the seven passengers. As a result of the sudden stop, plaintiff struck one of the metal racks, injuring his lower back. An Otis maintenance technician who was on the premises at the time was able to open the elevator doors and release the passengers. Upon exiting the elevator, the inmates were escorted to the CCC medical clinic for medical examinations and later brought to Charity Hospital for further evaluation.
After being released from custody, plaintiff filed suit against Otis, the Orleans Parish Criminal Sheriff's Office and Sheriff Foti. In his petition for damages, plaintiff alleges Otis was negligent in failing to properly design, manufacture and maintain a safe elevator, and failing to properly inspect the elevator for mechanical or design defects. He further alleges negligence on the part of Sheriff Foti in failing to properly monitor and inspect the elevator for defects; failing to take proper action when notice was given that the elevator had problems; and, failing to properly advise the maintenance crew of the problems with the elevator.
Following a bench trial on the merits, the trial judge found Foti and the Orleans Parish Criminal Sheriff's Office free from fault and dismissed them from the suit. The judge, however, found Otis liable. In ruling from the bench, the judge stated: "The Court finds there is strict liability on the part of Otis, that it is impressed with the maintenance work it has done, but the machinery itself is a dangerous instrumentality. The Court hereby finds strict liability."
*499 On appeal, Otis argues the trial judge erred in finding it liable for plaintiff's injury.
In a negligence case, those based on C.C. art. 2315 and 2316, an injured claimant must prove that the thing which caused the injury was owned by or was in the custody of the defendant, that it created an unreasonable risk of harm or injury that resulted in damage, that the owner or custodian knew or should have known of the risk, and the owner/custodian failed to render the thing safe or to take adequate steps to prevent the damage caused by the thing. Kent v. Gulf States Utilities Company, 418 So.2d 493 (La.1982).
In a strict liability case under C.C. art. 2317 against the same owner/custodian, the claimant is relieved only of proving that the owner/custodian knew or should have known of the risk involved. The claimant must still prove that under the circumstances the thing presented an unreasonable risk of harm which resulted in damage. Kent v. Gulf States Utilities Co., supra.
Although plaintiff alleged that Otis was the manufacturer of the elevator he offered no proof of this allegation and Otis did not admit this fact. Accordingly, there is no evidence in the record to hold Otis strictly liable as the manufacturer of a dangerous instrumentality, and the trial court was clearly wrong to so hold.
The only other grounds for strict liability would be if Otis was the owner or had garde of the elevator. No one contends that Otis was the owner of the elevator.
With regard to the garde issue, Otis relies on the case of Spott v. Otis Elevator Co., 601 So.2d 1355 (La.1992). In Spott, the plaintiff brought suit against Otis for damages sustained when an elevator dropped four to five feet. Plaintiff claimed that Otis was liable to him under negligence and strict liability theories. The Supreme Court affirmed the district court's dismissal of Spott's suit, holding no liability on the part of Otis was proven. With respect to the strict liability claim, the court considered whether Otis had "garde" of the elevator at the time of the accident. The facts revealed the building owner derived the benefit from the elevator on the premises. The Court specifically found that a service contract by itself did not establish garde. Because the court found that the facts did not support a conclusion that Otis had garde of the elevator, it held that Otis could not be found strictly liable.
The facts in Spott are very similar to the facts in the present case. However, unlike Spott, plaintiff here failed to introduce into evidence even a service contract between Otis and the CCC or the City of New Orleans, the owner of the elevator. Proof that Otis had "garde" of the elevator is even weaker in the instant case.
At trial plaintiff testified as to the circumstances surrounding the accident. Following his testimony, plaintiff's counsel, over the objection of Otis' counsel, introduced into evidence a letter from Brent Taliaferro, an Otis service representative, to Lt. Jerry Hoffman, Director of Maintenance for the CCC, which explained why the elevator malfunctioned. Other than this letter, plaintiff offered no evidence whatsoever that Otis was the custodian or had control of the elevator and/or that it was responsible for the operation and/or maintenance of the elevator.
The letter plaintiff introduced into evidence states:
The subject shutdown occurred when the vane on the elevator which trips the hoistway door interlocks was bent out of alignment. As the elevator passed the next floor, the vane struck an interlock and caused the elevator system to shutdown as it should.
The elevator did not fall, but it stopped suddenly just as if the emergency stop switch were pushed. The stop may be alarming to passengers, but it is not dangerous.
Clearly, there is nothing in the letter to indicate that Otis had control or garde of the elevator. Furthermore, there is nothing in the letter which shows negligence on the part of Otis. In fact, as disclosed by the letter, the sudden stop was the result *500 of the safety interlocks' functioning normally.
It is well settled that a trial court's findings of fact are entitled to great deference and should not be disturbed unless manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989), writ denied 561 So.2d 105 (La.1990). In light of the lack of evidence to support a finding that Otis was the custodian or had garde of the elevator, we find the trial judge was clearly wrong in finding Otis strictly liable to plaintiff for his injuries.
We now address the issues raised by plaintiff in his appeal. Plaintiff argues the trial judge erred in dismissing Criminal Sheriff Charles Foti from the suit. Specifically he contends Sheriff Foti was negligent in overloading the elevator, causing it to malfunction.
The testimony in the record indicates that the elevator's maximum capacity was 4000 pounds. At the time of the accident, seven men and two food racks were on the elevator, whose total weight was far less than the maximum capacity. The testimony further reflects that it was not uncommon to place several men with food racks in the elevator, that it was done on a daily basis and that the elevator had never malfunctioned before.
As to plaintiff's claim that he was not given adequate medical treatment following the accident or that it was delayed, we find the evidence does not support this claim.
Immediately following the accident, plaintiff, the other inmates and the deputies were seen by the medical corpsmen at the CCC clinic. They were then taken to Charity hospital for complete medical examinations.
Plaintiff alleges in his appeal brief that he needed further medical treatment following his evaluation at Charity Hospital but that it was denied because the Criminal Sheriff's Office failed to submit his medical requests to proper authorities. After reviewing the record, we find this claim has no merit.
Dr. Barbara Smith, a neurologist employed by the Criminal Sheriff's Office as the medical director, testified as to the procedure inmates follow to obtain medical treatment. According to her, an inmate completes a sick call request form and when the corpsmen pass through the tiers, two or three times a day, they are to deliver the form to the corpsmen. The corpsmen then evaluate the request and determine whether the inmate's request can be attended to by a nurse or a physician. If it is determined the inmate needs to be treated by a physician, the request is given priority and the inmate is taken to Charity Hospital. A request that did not require immediate attention is also prioritized and could take up to seven days before it would be handled.
Plaintiff failed to present any testimony from either deputies, tier representatives or corpsmen that his request forms were not handled properly. In fact, plaintiff's prison medical record which was introduced into evidence, contains sick call requests dated January 15 and 17, 1990, both within one week of the elevator accident. It further reflects that plaintiff was taken to Charity Hospital ten days after the elevator accident on January 21, 1990 but that he complained only of a tooth ache and bumps on his face. On February 9, 1990, plaintiff again saw a physician at Charity Hospital who noted that plaintiff complained of the elevator accident but was asymptomatic at that time. Although there were other sick call requests in his medical record subsequent to February 9, 1990, none of them make reference to back pain or injury. In light of this evidence, we find plaintiff's claim that the Criminal Sheriff's Office prevented him from obtaining medical treatment is without merit.
Accordingly, for the reasons stated herein, we reverse that part of the trial court judgment in favor of plaintiff Leon Jolly and against defendant, Otis Elevator Company. That part of the judgment dismissing Charles C. Foti, Jr. and the Orleans Parish Criminal Sheriff's Office is affirmed.
*501 REVERSED IN PART, AFFIRMED IN PART.