645 So.2d 747 (1994)
Michael SALONE
v.
JEFFERSON PARISH DEPARTMENT OF WATER.
No. 94-CA-212.
Court of Appeal of Louisiana, Fifth Circuit.
October 12, 1994.
Rehearing Denied December 19, 1994.
*748 Curtis C. Kronlage, Charles A. Kronlage, Jr., New Orleans, for plaintiff/appellant, Michael Salone.
Lawrence J. Centola, Jr., Paul Politz, Hoffman, Sutterfield, Ensenat & Bankston, New Orleans, for defendant/appellee, Jefferson Parish Dept. of Water.
Before GAUDIN and CANNELLA, and JOHN C. BOUTALL, J. Pro Tem.
JOHN C. BOUTALL, Judge Pro Tem.
Plaintiff/appellant, Michael Salone, appeals a judgment of the district court dismissing his personal injury action for damages. We affirm for the following reasons.

FACTS
On June 27, 1991, Michael Salone ("Salone") alighted from his father's car in order to walk across his lawn to his home in Terrytown in Jefferson Parish. After taking one step out of the car, he next stepped onto a water meter cover which flipped up, striking him on the leg and causing his leg to be partially thrust into the lower, open section of the meter. Salone sustained a tear in the central capsule of his left sacroiliac joint. Suit was filed against the Jefferson Parish Department of Water ("JPDW"), alleging that the meter was defective, and alternatively, that JPDW was negligent in failing to properly maintain and inspect the meter. The matter proceeded to trial on September 1, 1993. Following receipt of post-trial memoranda from the parties, the trial court ruled that plaintiff had failed to prove that JPDW had knowledge, real or constructive, of any defect in the meter or lid, and no proof that any defect existed. The case was dismissed, and it is from this dismissal that plaintiff appeals.
In brief, Salone alleges that the court committed manifest error in finding, as a fact, that plaintiff had failed to prove any defect in the meter; in finding that JPDW had no knowledge of the defects in the meter; and in failing to draw forceful inferences against JPDW because of its "gross spoliation of critical evidence which it had gathered and taken into its sole custody and control, and its failure to present such evidence."
At trial, Mervin Graves, Water Service Inspector Supervisor, testified that in his supervisory capacity with JPDW, he is responsible *749 for seeing that all aspects of reading meters, repairing leaks, closing off service, etc. is properly handled. Included in his job is supervision of meter readers. He testified that meters are read "as close to [every] sixty days as possible." With reference to this particular accident, he received a call from his office telling him to go to the scene and inspect the meter because there was an accident. When he got there, the cover was sitting properly on the box, "so it had apparently been replaced by someone. I don't know." He ordered another truck to go out and replace the cover and testified at that point that "... it was below grade of them raised boxes." The policy of JPDW, when an accident occurs, is to inspect the area, take pictures and make a written report. Mr. Graves was certain that he inspected the scene, and that he had made a report, but a copy of it could not be located. Neither could he locate any photographs which should have been taken in conjunction with the report. He also testified that, in the event of an accident, JPDW normally replaces the cover in question, brings that cover to the warehouse and stores it there. He did not know whether this was ever done in this case. He did not know what happened to the (allegedly) defective cover. By virtue of the water bill issued to plaintiff, Graves determined that JPDW's employee, Kevin English, read the meter at the Salone residence on June 18, 1991, nine days before the accident. When a meter is read, the reader lifts the cover with a screwdriver, reads the meter, and closes the cover by seating it within its seal and stomping on it. In addition to this, the reader is supposed to record various hazardous conditions which may exist. No evidence of any recordation or report of any hazardous condition was introduced. When asked as to how the meter lid could cave in, Graves answered:
It's not properly on the box.
Q. In other words, when it was placed back on the housing mechanism, it was not sealed properly; is that correct?
A. If it's not replaced properly but if it's replaced properly, there's no way I know for it to come off.
Q. How is the second possibility?
A. That the lid itself was cracked or had a piece missing I suppose.
Q. Do you know of any other way that this mechanism should turn and cave in when stepped on?
A. No.
Mr. Graves did not have personal recollection of the particular accident in question except for pictures which were shown to him. When asked directly at this point whether the meter was below grade, he stated that he could not answer and that, although the photos depicted high grass, it was "hard to say" whether the meter cover was below grade.
Plaintiff testified that after his foot went into the meter, his wife helped him out, and then went in to call JPDW. Meanwhile, he put the lid back on top correctly to avoid any further accidents. He stated that the meter was sunken three to five inches below the surface of the ground. Before the date of the accident, he did not notice anything unusual about the water meter cover when coming or going from the house, or when cutting the grass, except that it was low. However, he did not report this to JPDW. With regard to the accident itself, Mrs. Salone testified that in her estimation, the meter was sunken a depth of about five inches.

ANALYSIS
La.R.S. 9:2800 reads as follows:
Sec. 2800. Limitation of liability for public bodies
A. A public entity is responsible under Civil Code Article 2317 for damages caused by the condition of buildings within its care and custody.
B. Except as provided for in Subsection A of this Section, no person shall have a cause of action based solely upon liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.

*750 C. Constructive notice shall mean the existence of facts which infer actual knowledge.
D. A violation of the rules and regulations promulgated by a public entity is not negligence per se.
E. "Public entity" means and includes the state and any of its branches, departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, employees, and political subdivisions and the departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, and employees of such political subdivisions. Public entity also includes housing authorities, as defined in R.S. 40:382(1), and their commissioners and other officers and employees.
In Buffinet v. Plaquemines Parish Commission Council, Slip Opinion No. 93-CA-0840 (La.App. 4 Cir., July 27, 1994), 645 So.2d 631, the Fourth Circuit summed up the applicable law and jurisprudence as follows:
There are two theories of liability available to a plaintiff who claims she was injured as a result of the condition of a thing: negligence, under La.C.C. arts. 2315 and 2316, and strict liability, under La.C.C. arts. 2317. Under both theories of liability a plaintiff must prove that the condition of the thing presented an unreasonable risk of harm, or was defective, and that this condition of the thing was a cause-in-fact of her injuries. Jolly v. Otis Elevator Co., 620 So.2d 497 (La.App. 4th Cir.1993). Also, under both theories of recovery a plaintiff is required to prove that the thing in question was owned by the defendant and/or that it was in his custody or care and, thus, that the defendant owed the plaintiff or all persons in the general class to which she belongs (i.e., persons who may use or encounter the thing) a duty to keep the thing in a condition such that it will not present an unreasonable risk of harm. In a negligence action the plaintiff must further prove that defendant had actual or constructive knowledge of the risk of harm presented by the condition of the thing and failed to take steps to remedy the condition or to warn persons of its existence. In a strict liability action a plaintiff is relieved of the burden of proving that the defendant knew of the existence of the condition. Kent v. Gulf States Utilities Co., 418 So.2d 493 (La.1982); Jolly v. Otis Elevator Co., supra. However, when the alleged owner or custodian of the thing is a public entity, to establish strict liability a plaintiff must still prove actual or constructive notice. La.R.S. 9:2800(B).
Thus, under either a strict liability or negligence theory of recovery, Salone must prove that JPDW had actual or constructive notice of a defect or unsafe condition of the meter or cover in order to prevail.
Salone avers on appeal that the failure of JPDW to preserve and/or present at trial the meter cover, copies of reports, and photographs, which evidence had been in the custody of defendant, requires the court to draw an adverse presumption that, had such evidence been preserved and presented, it would have been unfavorable to the defendant. Plaintiff contends that the gross spoilation of the evidence made it impossible for him to prove any more than he did.
Where a litigant fails to produce evidence available to him and gives no reasonable explanation, the presumption is that evidence would have been unfavorable to his cause. Wilson v. U.S. Fire and Casualty Company, 593 So.2d 695 (La.App. 4th Cir.1991), writs denied 597 So.2d 1027 and 597 So.2d 1037 (La.1992). See also Rodriguez v. Northwestern National Insurance Company, 358 So.2d 1237 (La.1978). The presumption is not applicable where the failure to produce the evidence is explained. Bourgeois v. Bill Watson's Investments, Inc., 458 So.2d 167 (La.App. 5th Cir.1984); Babineaux v. Black, 396 So.2d 584 (La.App. 3rd Cir.1981).
Boh Bros. Const. Co. Inc. v. Luber-Finer Inc., 612 So.2d 270 (La.App. 4 Cir.1992); see also Bond v. Allemand, 632 So.2d 326 (La. App. 1 Cir.1993).
In the present case, defendant did not offer a reasonable explanation as to why the reports, photographs, and meter cover were not available. Mr. Graves' statements that *751 he did not know where the evidence is or could not find it does not reach the level of explanation, especially in view of his testimony that it was procedure to store the meter covers and make accident reports. Therefore, the adverse presumption may be drawn against defendant that presentation of the evidence would have been unfavorable to its case. Such presumption does not, however, end the inquiry.
The adverse presumption rule is but one factor to weigh in adjudicating the case and may not always be fatal. Dunckelman v. T. Baker Smith & Sons, Inc., 447 So.2d 26, 29 (La.App. 1 Cir.1984).

Bond v. Allemand, supra.

Under La.R.S. 9:2800, it was incumbent upon plaintiff to show that defendant had actual or constructive notice of any defect or vice in the meter cover. Constructive notice is defined in the statute as "the existence of facts which infer actual knowledge." We find no evidence that defendant had actual notice of any problem with the meter, nor did plaintiff prove the existence of facts which infer actual knowledge. In brief, plaintiff urges that defendant must have had actual knowledge of a defect because the meter had been read nine days before the accident. Alternatively, plaintiff states that JPDW should have seen such defect. We are unable to extend the adverse presumption to include actual or constructive knowledge under the facts of the present case.
Mr. Graves testified that at the time a meter is read, the reader must make a report of any hazardous conditions which exist. There is no reference to the existence of any such hazard report, which appears to be a separate document from the missing accident report, in the record before us. While plaintiff states that the accident report "should have contained statements from Kevin English, regarding his handling of the meter just nine days before plaintiff's accident," we do not find anything from the testimony as to specifically what should have been, or was customarily, included in the accident report. Salone testified that he did not notice anything amiss with the meter, even though he cut the grass himself around the house. The only problem that he did see, the below grade level of the meter, he did not report.
This case is distinguishable on its facts from Blanchard v. Republic Ins. Group, 576 So.2d 1226 (La.App. 5 Cir.1991) and Tracy v. Jefferson Parish, 523 So.2d 266 (La.App. 5 Cir.1988). In both cases, the court found as a matter of fact that the while the meters were below grade, the cause of the accidents was that the respective meter lids had not been seated properly due to high grass growth and accumulation between the lid and the housing of the meter box. We are unable to make that latter determination, or even assumption here, since plaintiff was able to correctly seal the lid on the box immediately after his fall, and there is nothing in his testimony to indicate grass or other debris having accumulated on the lid. Likewise, there is nothing in the testimony of either Mr. or Mrs. Salone that the cover appeared to be defective. Plaintiff conceded in his post-trial memorandum that the sunken condition of the box was not a contributing factor to his accident, but only the fact that the lid was loose. While it appears that the cover was indeed loose, we are unable to conclude from the facts before us that JPDW was responsible for that condition. The meter was located in a public entry area, and plaintiff did not show that only defendant had access to it at any time.
Therefore, we see no manifest error in the finding of the trial court that plaintiff did not prove actual or constructive notice of a defect.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.