612 So.2d 270 (1992)
BOH BROTHERS CONSTRUCTION COMPANY, INC., et al.
v.
LUBER-FINER, INC.
No. 92-CA-0229.
Court of Appeal of Louisiana, Fourth Circuit.
December 29, 1992.
Writ Denied March 26, 1993.
*272 Kevin C. O'Bryon, Leake & Andersson, New Orleans, for plaintiff/appellant, Boh Bros. Const. Co., Inc., Jules Lewis, Internl. Surplus Lines Ins. Co. and North River Ins. Co.
John A. Stewart, Jr., James A. Oswald, Hulse, Nelson & Wanek, New Orleans, for defendants/appellees, Luber-Finer, Inc., Transp. Ins. Co., and Continental Cas. Co.
Before BARRY, WARD and JONES, JJ.
BARRY, Judge.
Boh Brothers Construction Company, Inc. appeals the denial of its contribution/indemnity claim against Luber-Finer, Inc., the manufacturer of a bypass oil filter unit which was installed on a truck owned by Boh Bros.
Oil leaked from the truck onto the street which caused a passing motorist to lose control of his vehicle and suffer serious injuries.[1] The victim and his subrogated insurer sued Boh Bros. and Jules Lewis, its truck driver. The victim's insurer settled its claims for medical payments and collision benefits. The victim's suit resulted in an award of $502,060.66 against Boh Bros. which was amended and affirmed on appeal. Arruebarrena v. Boh Brothers Construction Company, Inc., 539 So.2d 78 (La.App. 4th Cir.1989).
*273 Boh Bros. and Jules Lewis sued the filter manufacturer, Luber-Finer for contribution/indemnity. By amended petition Boh Bros.' insurers, International Surplus Lines Insurance Company and North River Insurance Company, were added as plaintiffs and Luber-Finer's insurers, Transportation Insurance Company and Continental Casualty Company, were named defendants.
Boh Bros. claims that the trial court erred:
(1) by instructing the jury that Boh Bros.' fault was the proximate cause of the accident;
(2) by instructing the jury that discarding the filter unit before trial raised a presumption that the unit would discredit Boh Bros. defense;
(3) by refusing to permit Boh Bros.' mechanic to explain the timing of the alleged oil change.

JURY CHARGES

Errors # 1 and # 2
As part of the jury charge the trial court read the interrogatories including No. 3 which stated in part: "The negligence of Boh Brothers Construction Company, Inc. has been determined to be a proximate cause of the accident of August 8, 1985." The jury was given a copy of the written interrogatory. Boh Bros. argues that the jury was poisoned and the interrogatory violates La.C.C.P. art. 1791 which provides that a judge shall not comment on the facts of a case.
Boh Bros. submits that the trial court considered the Arruebarrena case to be res judicata as to this matter. The trial court stated: "It's not possible for the jury to find zero negligence on the part of Boh Brothers Construction Company because it's res judicata...." When Boh Bros.' counsel again objected to the verdict form, the court stated: "I think it's res judicata. This is all part of the same case. There's already bee [sic] a determination of negligence, it's already gone through the appelate [sic] process. There is no way for this jury to come back and find no negligence on the part of Boh Brothers." When counsel stated that Luber-Finer was a new defendant the court declared: "This is the same case, we've just severed a portion of it."
Boh Bros. argues that the parties and their rights are not identical and res judicata is not applicable. Boh Bros. quotes from this Court's opinion in Arruebarrena, 539 So.2d at 88:
Counsel for the defendant urges us to rule that Boh Brothers should be found strictly liable for the injury resulting from the defect of a thing under its control and thereby enhance Boh Brothers' claim in a separate action against the manufacturer of the oil filter that allegedly caused the oil spill as a result of a malfunction. The record before us supports the trial judge's determination as a reasonable finding that Lewis' failure to warn resulted in the accident and injuries sustained by Mr. Arreubarrena [sic]. We cannot find manifest error and abuse of discretion in the trial judge's decision. However, this is not to say that such a position must necessarily be adopted by another trial court with respect to the particular record placed before it. The fact finder there may well find otherwise.
The jury should have been allowed to make an independent finding as to fault and causation. The trial court erred.
Adequate jury instructions fairly and reasonably point out the issues and provide correct principles of law for the jury to apply to those issues. The instructions must properly reflect the law applicable in light of the facts of the particular case. Cuccia v. Cabrejo, 429 So.2d 232 (La.App. 5th Cir.1983), writ denied 434 So.2d 1097 (La.1983). The mere discovery of an error in the court's instructions does not automatically justify a de novo review by the appellate court without first measuring the gravity or degree of the error and considering the instructions as a whole and the circumstances of the case. The manifest error standard may not be ignored unless the jury charges are so incorrect or so inadequate that the jury was precluded from reaching a verdict based on *274 the law and the facts. Barnett v. New Orleans Public Service Inc., 489 So.2d 452 (La.App. 4th Cir.1986).
When a jury is erroneously instructed and the error probably contributed to the verdict, the verdict must be set aside on appeal. Smith v. Travelers Insurance Company, 430 So.2d 55 (La.1983). Only then should the reviewing court make an independent determination of the facts from the record, if possible, without according any weight whatsoever to the factual findings of the erroneously instructed jury. The manifest error rule is not to be used when the jury's factual findings favorable to the prevailing party have been tainted. Picou v. Ferrara, 483 So.2d 915 (La.1986); Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975).
The trial court instructed the jury on negligence and proximate cause then stated:
This does not mean that law recognizes only one proximate cause of an injury or damage consisting of only one factor or the conduct of only one person. On the contrary, many factors or things or the conduct of two or more persons may operate at the same time either independently or together to cause injury or damage. In such a case each may be a proximate cause of the injury or damage.
The court instructed as to products liability and read the interrogatories starting with question one which asked whether "the product manufactured by Luber-Finer, Inc. was defective or unreasonably dangerous to normal use." If the jury answered affirmatively to No. 1, No. 2 asked whether "the product defect was the proximate cause of the accident...." If the jury said "yes," No. 3 stated that the "negligence of Boh Brothers Construction Company has been determined to be a proximate cause of the accident" and then asked the jury to express the degree of comparative fault of Luber-Finer and Boh Bros. The court told the jury that each party could be at fault from 0% to 100%.
Luber-Finer argues that the trial court's additional instructions as to more than one proximate cause and that Boh Bros. could be 0% to 100% at fault renders the trial court error's harmless. Reading the instructions as a whole, the erroneous instruction was not harmless. An instruction which advises that one of the jury questions had been decided against Boh Bros. was very prejudicial and must have contributed to the verdict.
Boh Bros. further argues that another jury charge was erroneous or incomplete. Over Boh Bros.' objection the trial court gave Luber-Finer's requested charge # 21 which provided:
I charge you there [sic] there's a duty on the part of a party to preserve evidence which it knows or should have known would be an important piece of evidence in subsequent litigation. In this case there was a duty on the part of plaintiff, Boh Brothers, to preserve the filter unit assembly and the gasket. These items were discarded and not preserved. I charge that this conduct raises the presumption against the plaintiff that the evidence, the filter unit assembly and the gasket had they not been disregarded [sic] would have operated against Boh Brothers and discredited its claims against the defendant, Luber-Finer, Inc.
Where a litigant fails to produce evidence available to him and gives no reasonable explanation, the presumption is that evidence would have been unfavorable to his cause. Wilson v. U.S. Fire and Casualty Company, 593 So.2d 695 (La. App. 4th Cir.1991), writs denied 597 So.2d 1027 and 597 So.2d 1037 (La.1992). See also Rodriguez v. Northwestern National Insurance Company, 358 So.2d 1237 (La. 1978). The presumption is not applicable where the failure to produce the evidence is explained. Bourgeois v. Bill Watson's Investments, Inc., 458 So.2d 167 (La.App. 5th Cir.1984); Babineaux v. Black, 396 So.2d 584 (La.App. 3rd Cir.1981).
Boh Bros. contends that the jury instruction had the effect of discrediting its claim. A proper instruction would have informed the jury that Boh Bros. could rebut the presumption by explaining its failure to produce the evidence. Luber-Finer *275 argues that Boh Bros. nevertheless could not adequately explain its failure to produce the filter assembly unit. The erroneous instruction tainted the jurors' deliberations as to whether Boh Bros. carried its burden of proof.
Because of the erroneous jury instructions the jury's factual findings were tainted. The jury verdict is set aside. This Court will make an independent determination from the record without according any weight to the factual findings of the erroneously instructed jury.

EXCLUSION OF TESTIMONY[2]

Error # 3
Boh Bros. also claims it was not allowed to properly question its mechanic, Hubert Strong, on re-direct examination. Boh Bros. notes that the cross-examination of Mr. Strong, its mechanic, created the impression that there were undocumented oil changes (because of missing inspection reports) during which the oil filter assembly was opened. On re-direct counsel for Boh Bros. asked: "And if in fact there is a missing maintenance sheet on this vehicle from the ones we have here on the paper, in what mileage range would that sheet be?" Defense counsel objected on the basis that the question was "speculation" and the objection was sustained. Mr. Strong again said that he thought a report was missing. Boh Bros.' next question as to the location of the missing form was met with a second objection which was sustained. The next question as to whether the missing inspection sheet was "before or after" was met with a third sustained objection. Boh Bros. then made a proffer.
The trial court ruling was not clearly wrong because the question was speculative. Luber-Finer's counsel conducted a lengthy (and favorable) cross-examination of Mr. Strong about the alleged missing reports. This Court will consider Boh Bros.' proffered affidavits.
By affidavit Mr. Strong declared that the missing report or reports related to vehicle inspections after the accident between August 12, 1985 (mileage 10,959) and December 5, 1985 (mileage 22,516). Another oil change should have been made at about 14,459 miles, but Mr. Strong had no such report. Mr. Strong also said that his identification of Exhibit 9-2 as similar to the gasket which was removed from the Luber-Finer 750CT unit was made without his viewing Exhibit 9-9, which was identical to the gasket.

PRODUCTS LIABILITY
To recover from a manufacturer under a theory of products liability, the plaintiff must prove that the harm resulted from the condition of the product, that the condition made the product unreasonably dangerous for normal use, and that the condition existed at the time the product left the manufacturer's control. Bell v. Jet Wheel Blast, 462 So.2d 166 (La.1985).
A product is unreasonably dangerous per se if a reasonable person would conclude that the danger-in-fact of the product, whether foreseeable or not, outweighs the utility of the product. A product is unreasonably dangerous in construction or composition if it contains an unintended abnormality or condition which makes it more dangerous than it was designed to be at the time it leaves the manufacturer. A product may be unreasonably dangerous because of its design if: (1) a reasonable person would conclude that the danger in fact (whether foreseeable or not) outweighs the utility of the product; (2) although the risk utility test leads to the conclusion that the product is not unreasonably dangerous per se, alternative products were available to serve the same needs with less risk of harm; and (3) although the utility of the product outweighs its danger in fact, there was a feasible way to design the product with less harmful consequences. Halphen v. Johns Manville *276 Sales Corporation, 484 So.2d 110 (La. 1986).[3]
A manufacturer is required to provide an adequate warning of any danger inherent in the normal use of its product which is not within the knowledge of the ordinary user. The product may be unreasonably dangerous if the manufacturer fails to so adequately warn about the danger related to the way the product is designed. Halphen, 484 So.2d at 110; Winterrowd v. The Travelers Indemnity Company, 462 So.2d 639 (La.1985).

TESTIMONY AND ANALYSIS
Chester Mathe, Boh Bros.' truck foreman, testified that three trucks were purchased, at the same time, including truck # 26 which was involved in the accident. He ordered three Luber-Finer (L-F) bypass oil filter units 750CT. He said the oil and oil filters were usually changed every 8,000 miles. The L-F assembly was opened and the bypass filter was changed every 16,000 miles. Truck # 26 had its first oil change on May 16, 1985 but the L-F unit was not opened before the accident. Although he viewed the faulty unit after its removal he had no recollection of the unit. He was not told of the lawsuit until almost a year after the accident and the filter had been discarded.
Hubert Strong, who did routine maintenance on Boh Bros.' trucks, testified that he wrote the inspection reports. On January 29, 1985 truck # 26 had a "new truck" inspection (860 miles on the tachograph). On May 16, 1985 (6,479 miles) the engine oil and oil filter were changed, but the L-F bypass oil filter was only drained. He never opened the assembly. During cross-examination Mr. Strong's testimony was impeached by his prior deposition statement that he might have changed the L-F bypass filter a couple of times. He further stated by deposition that he changed the filter and the "O" ring on the L-F unit one or more times before the accident. At trial he only stated that his prior statement was incorrect according to Boh Bros.' records.
Mr. Strong stated he used only NAPA replacement parts. He examined the failed L-F unit after it was removed from truck # 26. The "O" ring had no dents but the # 1954 gasket was protruding where the two clamps met. He said that after the accident no one questioned the filter and it was discarded. He did not know about the pending suit when the unit was thrown away. On cross-examination he clarified that he meant to say a # 5414 gasket. He acknowledged several times that at least one Boh Bros. inspection record was missing for 1985.
Robert Fleishmann, Boh Bros.' expert mechanical engineer, testified that he mounted an L-F bypass oil filter unit 750CT and ran tests to determine the pressure it could withstand without leaking. Using water he found that the gasket leaked slightly at 160 PSI, but he conceded that the normal pressure exerted was usually 15-20 PSI. Mr. Fleishmann stated he might have mounted the unit incorrectly because the instructions were confusing as to the number of brackets to be used.
Mr. Fleishmann tested Baldwin, Fram, and Wix filters. He stated that a lock washer on the clamp would have prevented leakage. Mr. Fleishmann declared that the clamp ring could loosen over time from vibrations. He noted that in the L-F filter units the replacement gasket number was not stamped on the cap of the filter as in other units. He stated that the L-F unit could have been improved by specifying the type of replacement gasket to be used and giving specific instructions on mounting.
On cross-examination Mr. Fleishmann conceded that he could not determine the specific cause of the oil leak because the failed unit had been discarded. He speculated that the leak could have been caused by replacement of the wrong gasket. His deposition testimony that a new filter had been installed immediately prior to the accident was produced. Mr. Fleishmann acknowledged *277 that his notes showed a new filter installation contrary to Boh Bros.' documents. He said he did not test all alternative gaskets. Mr. Fleishmann stated that the leak at 16 PSI was a dribble which stopped when pressure was lowered to 120 PSI. He admitted that a photo of the L-F bypass oil filter unit clearly showed two brackets when installed. Mr. Fleishmann conceded that his deposition did not mention the mounting problem or the necessity for a lock washer.
Lawrence Newton, Boh Bros.' purchasing agent, testified that Boh Bros. bought no parts from Luber-Finer. In trial and deposition testimony Mr. Newton said he purchased replacement parts from NAPA and others.
By deposition Jules Lewis, Boh Bros.' driver involved in the accident, testified that "the gasket busted loose" and oil began flowing and sprayed into the air. Mr. Lewis said that he drove half a block to the traffic light, stopped, and then pulled to the side. Within minutes he heard the accident. He said the oil in the truck was changed once a month. Raymond Arcement, Boh Bros.' safety engineer, testified that safety instructions were given to all drivers relating to the possible failure of a vehicle; however, no special instruction on leakage of oil was provided.
By deposition Sandro Navas, a Boh Bros.' mechanic, testified that he responded when Lewis' truck malfunctioned. He saw oil all over the L-F bypass oil filter unit and leaking around the clamp. He could not identify the brand name of the oil filter. He called it a Luber-Finer as a generic name for all bypass oil filter units. Mr. Navas could not recall whether the bypass filter was the original L-F filter or whether it had been changed, but it appeared new. He had not done maintenance on the truck before or after the accident. He stated that old oil filters were customarily discarded.
On cross-examination Boh Bros. called John Gaither, engineer for Champion Laboratories, which owns Luber-Finer, Inc. He testified that no warnings or special instructions were distributed with the filter. On direct examination he testified that the L-F bypass oil filter unit 750CT was built to withstand 65 PSI normally and a peak pressure of 100 PSI. Mr. Gaither testified that Luber-Finer never informed customers that any other brand replacement filter or gasket could be used. He stated that Mr. Fleishmann did not mention and did not test several other gaskets on the market.
Mr. Gaither testified that Luber-Finer tested each unit before distribution. The testing of every unit began March 22, 1984. All units were tested with air to withstand 25 PSI for twenty seconds, the equivalent of 175 PSI with oil. The other two L-F bypass oil filters, which were purchased with the allegedly defective filter on truck # 26 were stamped October 17, 1984, well after comprehensive testing began. Mr. Gaither stated that Luber-Finer never endorsed cross referencing to NAPA or other parts. The L-F 750CT unit was made substantially in the same manner for forty years and had been trouble-free. The gasket within the flange at the top and bottom of the unit served as a lock washer and therefore such a washer was unnecessary in the design.
Meahdy Sabbaghian, a defense mechanical engineer expert, tested L-F units similar to the one which malfunctioned. He stated that the gasket could hold up to 170-180 PSI with very little air leaking. When he loosened the clamp bolt three and a half turns, the gasket popped and oil flowed everywhere. He stated that hand tightening the bolt could have caused the L-F 750CT to leak under 15-18 PSI. The L-F bypass filter unit had to be tightened with a wrench for proper installation. Mr. Sabbaghian also stated that use of an improperly fitting gasket could cause a leak.

SUMMARY
Boh Bros. could not produce the unit which had malfunctioned, hence the experts could not examine the allegedly defective L-F bypass oil filter unit and had to speculate as to the possible cause(s) of the leak. Boh Bros.' expert, Robert Fleishmann, could not determine the cause of the leak. Mr. Fleishmann's tests involved *278 greater pressures than the unit was designed to withstand and he only tested some of the filter units on the market. The need for a lock washer was not proven in light of the unit's many years of service and Mr. Gaither's testimony that the flange at the unit's top and bottom functioned like a lock washer. Boh Bros. did not prove that the L-F bypass oil filter unit assembly had not been opened or that the gasket and filter was replaced prior to the accident.
Boh Bros. failed to carry its burden of proving that the L-F bypass oil filter unit 750CT was defectively designed or unreasonably dangerous.
After our independent review this Court concludes that the claims of Boh Bros. and the other plaintiffs must be dismissed. The trial court correctly dismissed plaintiffs' claims (although pursuant to a tainted jury verdict) and that judgment is affirmed.
AFFIRMED.
WARD, J., concurs.
WARD, Judge, concurring.
I concur in the majority decision. However, I do not believe trial error contributed to the jury verdict. The jury instructions when taken as a whole clearly indicated that the jury could find Luber-Finer, Inc., guilty of negligence. They did not indicate, at least to me, that because Boh's conduct had been determined to be a "proximate cause" that Luber-Finer's conduct could not be another cause. The trial court emphatically said there could be more than one proximate cause, as the majority points out. Therefore, the only possible error or question raised is whether the jury instructions meant that the jury could not find Boh free of negligence. However, this issue never came up because the jury found Luber-Finer, Inc., free of negligence, eliminating Boh's negligence as an issue.
On the second alleged error, Boh is correct when it complains that an explanation may be considered as evidence that rebuts the presumption. Boh's excuse for not producing the alleged defective filterold oil filters are discardedis not an explanation of why it was not preserved if Boh thought, as it alleges, that it was a defective filter. For this reason, the trial court's jury instructions were not wrong, and if they were, any error was minuscule or harmless.
NOTES
[1] The detailed facts of the accident are in Arruebarrena v. Boh Brothers Construction Company, 539 So.2d 78 (La.App. 4th Cir.1989), the personal injury suit.
[2] Although Luber-Finer argues that the trial court erred by refusing to allow the testimony of its expert, John Rigol, it did not appeal or answer the appeal. Because of our decision there is no need to discuss this argument.
[3] Halphen was overruled by La.R.S. 9:2800.51 et seq., the Louisiana Products Liability Act. The 1988 Act which altered substantive rights is not applied retroactively. Gilboy v. American Tobacco Company, 582 So.2d 1263 (La.1991). The Act does not apply to this case.