753 So.2d 234 (1998)
Lillian Schon SMALL, et al.
v.
The BALOISE INSURANCE COMPANY OF AMERICA, et al.
Lafayette Insurance Company
v.
Succession of Joseph Impastato, et al.
Nos. 96-CA-2484, 96-CA-2485.
Court of Appeal of Louisiana, Fourth Circuit.
March 18, 1998.
Opinion Clarifying Judgment on Grant of Rehearing April 17, 1998.
Writ Denied July 2, 1998.
*237 Frank W. Lagarde, Jr., Metairie, and Lee A. Archer, Lake Charles, for Lillian Schon Small, Bohemian Crystal and Art Exchange, Ltd., d/b/a Lillian Schon Small Fine Arts, Adolph Sehring, and Adolph Sehring Studios, Inc./Appellants.
Geoffrey H. Longenecker, Longenecker & Associates, Ltd., Covington, for Lafayette Insurance Company/Appellant.
Michael P. Mentz, Hailey, McNamara, Hall, Larmann & Papale, L.L.P., Metairie, for Mary Jane Maggiore, Antoinette Maggiore and First Financial Insurance Company/Appellees.
Before BARRY, KLEES and JONES, JJ.
BARRY, Judge.
Lillian Schon Small, a fine arts dealer, seeks recovery for damage to her gallery and its contents caused by a malfunctioning water valve. Artist Aldolf Sehring seeks recovery for three paintings which were water damaged in the gallery. In a consolidated case, Small's insurer Lafayette Insurance Company seeks recovery of an insurance payment. The jury rendered a verdict for the defendants.
Small, Sehring and Lafayette Insurance company claim that the jury instructions were erroneous and defendants are liable under strict liability and negligence. Lafayette also claims the trial court erred by awarding costs. Defendants' answer to the appeal re-urges exceptions of prescription and no right of action.
We hold that it was proper not to instruct the jury on La. R.S. 37:1367 which requires a plumbing license for certain work. The jury's finding that defendants were not negligent was not manifestly erroneous.
Strict liability is applicable and the trial court erred by not so instructing the jury. We conclude that defendants had garde of the water valve which presented an unreasonable risk of harm and caused damage. Therefore, defendants are strictly liable.
*238 We reverse the judgment of the trial court and award $60,000 to Aldolf Sehring and $4,839.14 to Small.

Facts
Small leased the ground floor of a French Quarter building from Joseph Impastato, who is deceased. Small's business, Bohemian Crystal & Art Exchange, Ltd., had on consignment original oil paintings by renowned artist Adolf Sehring. Marialice Cohen, aka Josephine Sacabo, leased the apartment above the business as a photography studio.
Impastato's niece, Mary Jane Maggiore, was an executrix of his estate. Mary Jane's brothers, Anthony and Eugene Maggiore, assumed minor maintenance of the property.
Several months before the incident which forms the basis of this suit, the toilet in Cohen's apartment was "running," i.e., a constant flow of water that did not overflow. Anthony and Eugene Maggiore replaced the tank valve with a plastic Fluidmaster 400A Toilet Tank Repair Valve. The record shows that the valve worked without incident for several months.
In the early morning of May 22, 1990 the second floor toilet tank overflowed and leaked through the ceiling of Small's gallery. Mary Katherine Sauls, a local interior designer, saw the leak through the gallery window at 1:15 a.m. as she approached her car which was parked in the gallery courtyard. She was unable to reach Small by telephone. The business was flooded and three of Sehring's paintings were damaged. Cohen testified that no one was in the second floor apartment that day or evening.
Lafayette Insurance Company issued a commercial property insurance policy to Small which covered the premises. The Baloise Insurance Company of America issued a fine arts dealer policy to Small which covered items in the gallery.
On September 12, 1990 Small sued Baloise Insurance Company of America; Antoinette and Mary Jane Maggiore as co-executrices of Impastato's estate; and First Financial Insurance Company, Impastato's insurer, alleging strict liability and negligence.[1] The Maggiores filed a third party demand against Cohen and her husband Richard.
The Maggiores filed an exception of no cause of action and no right of action asserting that Small was the consignee rather than owner of Sehring's paintings and had no basis to recover for damage to the paintings. On March 30, 1992 Small amended her petition and added Sehring as a plaintiff. The Maggiores filed an exception of prescription as to Sehring's claim. The trial court denied the exceptions.
Lafayette Insurance Company paid Small $11,814 for property damage. On May 20, 1991 Lafayette filed suit against the Succession of Joseph Impastato through alleged succession representatives Mary Jane and Anthony Maggiore, and others to recovery that sum. The two cases were consolidated. Small settled with Baloise Insurance Company for $10,000 and dismissed Baloise from the litigation on November 21, 1995.
The jury found the Impastato succession was not negligent. The jury rendered a verdict for defendants in Small's case. Lafayette Insurance Company's subrogation claim was tried to the court which rendered judgment for the defendants. The trial court signed a judgment dismissing both cases.[2]

Standard of Review
Small and Sehring argue that this Court should consider the case de novo, giving no *239 weight to the jury's verdict because the trial court did not charge the jury on strict liability and La. R.S. 37:1367 (requires a plumbing license for some plumbing work).
De novo review is justified only when jury charges "`are so incorrect or so inadequate that the jury was precluded from reaching a verdict based on the law and the facts.'" Cooke v. Allstate Insurance Co., 93-1057 (La.App. 4 Cir. 4/14/94), 635 So.2d 1330, 1331, writ den. 94-1257 (La.9/2/94), 659 So.2d 496, quoting Boh Brothers Construction Company, Inc. v. Luber-Finer, Inc., 612 So.2d 270, 273-74 (La.App. 4th Cir.1992), writ den. 614 So.2d 1256 (La.1993).
The trial judge is not required to give the exact instruction submitted but must give instructions which apply to the pleadings and facts of the case. Theriot v. Bourg, 96-0466, p. 7 (La.App. 1 Cir. 2/14/97), 691 So.2d 213, 219, writ den. 97-1151 (La.6/30/97), 696 So.2d 1008; Fisher v. River Oaks, Ltd., 93-677 (La.App. 5 Cir. 3/16/94), 635 So.2d 1209, 1213, writ den. 94-0932 (La.6/3/94), 637 So.2d 503. The instructions must fairly and reasonably point out the issues. Theriot v. Bourg, 691 So.2d at 220. They must be based on the evidence adduced at trial. Cross v. Cutter Biological, A Division of Miles, Inc., 94-1477, p. 27 (La.App. 4 Cir. 5/29/96), 676 So.2d 131, 147, writ den. 96-2220 (La.1/10/97), 685 So.2d 142.
A finding not affected by an erroneous instruction remains subject to the manifest error rule. Picou v. Ferrara, 483 So.2d 915, 918 (La.1986).
Based on our examination of the instructions, law and evidence, infra, we conclude that the trial court properly omitted an instruction on La. R.S. 37:1367, but erred by omitting an instruction on strict liability.

Jury Instruction on La. R.S. 37:1367
Small and Sehring argue that the trial court erred by not instructing the jury on La. R.S. 37:1367 because the Maggiores replaced the valve without a plumber's license. That argument has no merit.
Section 1367 prohibits a person from engaging in the work of a journeyman plumber and master plumber without a license issued by the State Plumbing Board. La. R.S. 37:1367(A) and (B). A journeyman plumber is defined as a person with qualifications and knowledge to "install, alter, and/or repair plumbing systems" and who is licensed by the board, supervised by a master plumber, and employed by an "employing entity." La. R.S. 37:1377(B). A master plumber is a person who possesses the qualifications and knowledge "to plan and lay out plumbing systems," who is licensed by the board and supervises a journeyman plumber in the installation, alteration, and/or repair of plumbing systems. La. R.S. 37:1377(A).
"Plumbing" includes installation of "pipes, fixtures, and other apparatus for supplying water, or removing liquid waste and/or water-borne waste." It does not include:
Work done by an owner, management company, its agents, employees, or assigns for maintenance work to be carried out upon the owner's property, as such maintenance work is defined by rules of the State Plumbing Board. Such maintenance work shall specifically not include construction or installation.
La. R.S. 37:1377(D)(9).
The rules of the State Plumbing Board define "maintenance work" as
the changing of the working parts of faucets or valves of plumbing fixtures equipped with exposed fixture supply stops....
Rules of the State Plumbing Board, Title 46, § 101(F).
Maintenance work does not include repair to existing plumbing, clearing of stoppages, or repair of a leak. Id.; Rules of the State Plumbing Board, Title 46, § 101(E).
*240 A toilet is a plumbing fixture. Changing a valve is not repair to the plumbing. Though the toilet was "running" prior to the valve replacement several months before this incident, there is no evidence of a plumbing leak. Changing the tank valve was maintenance work under the rules.
Small and Sehring argue that changing the valve was an "installation" and was exempt from the exception of § 1377(D)(9). There is no authority for that argument.
La. R.S. 37:1367 does not apply. The trial court did not err by omitting a jury charge on that statute.

Jury Instruction on Strict Liability
Small, Sehring and Lafayette Insurance argue that the trial court erred by not instructing the jury on strict liability. That argument has merit.
The petition alleges negligence and strict liability. The trial court ruled that strict liability did not apply and instructed the jury on negligence. The court did not specify the basis for that ruling. Small and Sehring assert that the Maggiores as executrices of the Impastato estate are strictly liable under La. C.C. arts. 2317, 2322, 2692, 2693, 2695, 660 and 667. Lafayette Insurance joins that argument as to Art. 2317.
La. C.C. art. 2317 provides the general rule on strict liability:
We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications.
La. C.C. art. 2322 is a "modification" to Art. 2317 and concerns ruinous buildings. Prior to its amendment by Acts 1996, 1st Ex.Sess., No. 1 § 1, eff. April 16, 1996, Art. 2322 read:
The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction.
Under the law in effect at the time of this incident, knowledge of a defect was not a prerequisite to strict liability. The addition of Art. 2317.1 and amendment to Art. 2322 by Acts 1996 introduced reasonable care to the analysis and a plaintiff must now prove knowledge of the defect by the owner/custodian.[3]
Whether the 1996 amendment to Art. is retroactive is res nova. This Court has held that Art. 2317.1 constitutes a substantive change which is not retroactive. Warren v. Campagna, 96-0834, p. 4 n. 4 (La. App. 4 Cir. 12/27/96), 686 So.2d 969, 978 n. 4. See Moore v. Delta Waste System, Inc., 96-1984, p. 3 (La.App. 4 Cir. 3/12/97), 690 So.2d 1108, 1110. See also Frank L. Maraist & Thomas C. Galligan, Louisiana Tort Law § 14-1, at 331 (1996):
By requiring knowledge or constructive knowledge under Article 2317.1, the Legislature effectively eliminated strict liability under Article 2317, turning it into a negligence claim. This substantive change should not apply retroactively, as there is no express statement to *241 that effect in the act. Consequently, the earlier strict liability law still applies to claims that arose before the effective date of the 1996 legislation.
Contra Commentary by William E. Crawford preceding Form No. 311 in La. C.C.P. Pleadings and Judicial Forms, Vol. 10.
C.C. art. 6 provides that procedural and interpretive laws apply both retroactively and prospectively. [Citation omitted] A change in the burden of proof is procedural. [Citation omitted] The changes in C.C. arts. 660, 667, 2317.1, 2321, and 2322 are presumptively no more than changes in the burden of proof in those articles.
Because the amendment changes the analysis to negligence under both Art. 2317.1 and 2322, prospective application of those changes would be consistent with Warren v. Campagna, supra. We hold that the changes are substantive and apply the law in effect at the time of the incident.
To recover under Art. 2317 in strict liability and former Art. 2322, a plaintiff must prove that the building or appurtenance posed an unreasonable risk of injury and that damage occurred through that risk. Entrevia v. Hood, 427 So.2d 1146, 1148 (La.1983). Upon proof of those elements, the owner is responsible for the damage unless he shows that the damage was caused by the fault of the victim, a third person, or by an irresistible force. Id. Ignorance of the condition and circumstances that the defect could not be easily detected are not defenses. Id.
Liability under Art. 2317 requires that the defendant have custody or garde of the thing which was defective. Doughty v. Insured Lloyds Insurance Co., 576 So.2d 461, 464 (La.1991). See Celestine v. Union Oil Company of California, 94-1868, p. 7 (La.4/10/95), 652 So.2d 1299, 1303. In contrast, liability under Art. 2322 is based on ownership. Doughty, 576 So.2d at 461.
Whether the law imposes a duty of garde is a factual question. Doughty v. Insured Lloyds Insurance Co., 576 So.2d at 464; Baudoin v. McDermott, Inc., 93 2084, p. 3 (La.App. 1 Cir. 10/7/94), 644 So.2d 799, 801. Whether the thing which allegedly caused damage presented an unreasonable risk of harm to the plaintiff is an "issue of mixed fact and law or policy that is peculiarly a question for the jury or trier of the facts." Tillman v. Johnson, 612 So.2d 70 (La.1993), which reversed summary judgment for the defendants. Contra Sanders v. Posi-Seal International, 93 1007 (La.App. 1 Cir. 4/8/94), 635 So.2d 760, 762, which held that unreasonable risk of harm is a question of law, citing Entrevia v. Hood, supra.
The plaintiffs alleged and presented evidence which could have supported strict liability. The trial court erred by not submitting to the jury the questions of garde and unreasonable risk of harm and by not instructing the jury on strict liability.
This Court will conduct a de novo review to determine liability under Art. 2317. The jury charge did not affect the jury's finding on negligence which remains subject to manifest error review.

Negligence
Small, Sehring and Lafayette Insurance argue that the Maggiores as executrices are liable for negligence because they did not hire a licensed plumber to replace the valve, they used a "cheap plastic valve" instead of a brass valve, and they did not ensure that the overflow pipe could accommodate the flow of water in the event of a valve malfunction. That argument has no merit.
Plumber Carl Bourgeois testified that he would not install a plastic valve. However, Bourgeois and expert plumber James Finley testified that the plastic valve is not defective in design. Bourgeois said that using a plastic valve does not constitute negligence. Finley opined that the Maggiores properly installed the valve and that *242 he would have used the same procedure which they described.
Bourgeois testified that the water overflow could have resulted if the ball inside the toilet tank had wedged against the tank wall. Eugene Maggiore said the ball was not wedged against or brushing the sides of the tank wall when he replaced it in May 1990.
Bourgeois said that the overflow line was insufficient. Finley examined the overflow line and said it was one inch in diameter. Bourgeois and Finley said one inch is standard for the industry. There is no evidence that the Maggiores violated the standard of care by not determining the flow rate of the water and the capacity of the overflow line in the event of malfunction.
The record supports the jury's finding that defendants were not negligent.
Small and Sehring argue that defendants should be liable for negligence because they destroyed evidence and under the doctrine of res ipsa loquitur. That argument has no merit.
Those issues were not raised in the trial court. An issue which is raised for the first time on appeal generally is not considered by the appellate court. Segura v. Frank, 93-1271 (La.1/14/94), 630 So.2d 714, 725, cert. den. Allstate Insurance Co. v. Louisiana Insurance Guaranty Ass'n, 511 U.S. 1142, 114 S.Ct. 2165, 128 L.Ed.2d 887 (1994). This Court may consider the issue in the interest of justice. Uniform Rules, Courts of Appeal, Rule 1-3.
Small and Sehring urge this Court to consider spoilation of evidence and res ipsa loquitur in the interest of justice. They do not explain why they did not previously raise those issues. The parties knew at trial that the Maggiores discarded the valve when they replaced it the day of the flood.
Nonetheless, the record does not support plaintiffs' claims that the judgment should be reversed based on spoilation of evidence. Where a litigant fails to produce evidence available to him and he does not provide a reasonable explanation, the presumption is that evidence would have been unfavorable. Boh Brothers Construction Company, Inc. v. Luber-Finer, Inc., 612 So.2d at 274. That presumption does not apply where the litigant explains the failure to produce the evidence. Id.
Anthony Maggiore testified that he commonly discarded old valves because the valve is inexpensive and not worth the cost of repair. He immediately discarded the faulty valve after he replaced it. Suit had not been filed and there is no evidence that he knew suit would be filed. Compare Babineaux v. Black, 396 So.2d 584, 586 (La.App. 3d Cir.1981), cited by defendants, which considered that suit had not been filed.
Res ipsa is a rule of circumstantial evidence which allows a court to infer negligence if the facts indicate that the defendant's negligence more probably than not caused the damage. Spott v. Otis Elevator Co., 601 So.2d 1355, 1362 (La. 1992). The doctrine is sparingly applied and generally requires three elements: 1) the circumstances surrounding the accident are so unusual that, in the absence of other pertinent evidence, there is an inference of negligence by defendant; 2) the defendant had exclusive control of the thing causing the damage; and 3) the only reasonable and fair conclusion is that the accident was due to the defendant's breach of a duty. Id.
The evidence does not support consideration of res ipsa. The malfunctioning valve was not so unusual as to require an inference of negligence and we cannot conclude that defendant's negligence is the only reasonable and fair conclusion as to the cause of the malfunction.

Strict Liability Under La. C.C. art. 2317
To recover under Art. 2317 plaintiff must prove that he incurred damage by a *243 thing, the defendant had custody or "garde" of the thing, it contained a vice or defect which created an unreasonable risk of harm, and the defect caused the damage. Spott v. Otis Elevator Co., 601 So.2d at 1363.
Small, Sehring and Lafayette Insurance argue that the Impastato estate and Maggiores as executrices had garde of the toilet in the apartment leased to Cohen. The Maggiores and First Financial respond that a lessee may have custody of the leased premises for strict liability.
Ownership allows the presumption of custody but does not end the inquiry for Art. 2317 liability. Baudoin v. McDermott, Inc., 644 So.2d at 801.
Loescher v. Parr, 324 So.2d 441, 447, n. 6 (La.1975) describes garde as "the legal responsibility for its care of keeping" and explains that "one may lose the custody of a thing without losing its `garde,'" citing H.L. & J. Mazeaud, Traite', Theorique et Pratique de la Responsabilite' Civile, Vol. 2, No. 1160 (6th ed.1970); Verlander, We are Responsible..., 2 Tulane Civil Law Forum No. 2, p. 61 (1974).
"The things in one's care are those things to which one bears such a relationship as to have the right of direction and control over them, and to draw some kind of benefit from them. This relationship will ordinarily be associated with ownership, but the guardianship will also belong to the bailee, [and] the lessee, ... among others.... The owner may transfer the guardianship by transferring the thing to another who will bear such a relationship to the thing as to himself have the care of it."
Loescher, 324 So.2d at 449, n. 7, quoting Verlander, supra at 64.
Normally, the owner of a building remains liable for its condition and any injury arising therefrom even when the building is leased. Stelly v. Overhead Door Company of Baton Rouge, 94-0569, p. 9 (La.12/8/94), 646 So.2d 905, 913. An exception arises when the lessee contractually assumes the owner's responsibilities for the condition of the leased premises, including liability for any injury resulting from a defect in the leased premises. Id.; La. R.S. 9:3221.
Small's lease provided:
Lessee assumes responsibility for the condition of the premises and Lessor will not be responsible for damage caused by leaks in the roof, by bursting of pipes by freezing or otherwise, or by any vices or defects of the leased property, or the consequences thereof, except in the case of positive neglect or failure to take action toward the remedying of such defects within reasonable time after having received written notice from Lessee of such defects and the damage caused thereby....
Small leased the ground floor, not the second floor apartment, and she had no responsibility for the premises leased to Cohen. There is no evidence that Cohen assumed responsibility for the condition of the second floor apartment and toilet.
The evidence shows that Impastato's estate maintained the toilet on the second floor and that Anthony and Eugene Maggiore (the executrix's brothers) did minor repairs. Neither Cohen nor Small was responsible for the condition of the toilet and neither lessee had garde. Compare Guillory v. Foster, 93-996 (La.App. 3 Cir. 3/2/94), 634 So.2d 1372, 1375, which held that the sublessee who solely occupied and maintained the leased premises had garde.
Small, Sehring and Lafayette Insurance submit that the toilet valve was unreasonably dangerous. The Maggiores and First Financial respond that the utility of the valve and the toilet was great compared to the risk of malfunction.
Arts. 2317 and 2322 do not impose liability on the custodian or owner for all damage resulting from any risk imposed by the thing. Celestine v. Union Oil Company of California, 652 So.2d at 1303. Rather, the plaintiff must prove *244 that the vice or defect of the thing is a condition which poses an unreasonable risk of harm to others. Id.; Entrevia v. Hood, 427 So.2d at 1149. Whether a risk is unreasonable is "a matter wed to the facts" and must be determined in light of the particular plaintiff. Id. at 1304.
Justice and social utility must serve as guideposts and moral, social and economic values must be considered.... Claims and interests should be balanced, risk and gravity of harm should be weighed, and individual and societal rights and obligations must be considered.
Id.
The evidence shows that the Maggiores installed a new plastic valve in the toilet tank months before the leak and the valve worked until the date of this incident. The valve is not in evidence because the Maggiores routinely discarded it when it was replaced.
Plumbers Carl Bourgeois and James Finley testified the plastic valve did not have a design defect. They acknowledged that a malfunction can occur with proper installation. As discussed supra, the evidence supports a finding that installation was proper. Considering that the valve was properly installed and functional for months then suddenly failed, the circumstantial evidence supports a finding that the valve contained a defect.
The magnitude of the risk and policy considerations demonstrate that the defective valve presented an unreasonable risk of harm. Finley inspected the toilet tank and said it contained a one inch overflow line which is standard. The valve failure was of such magnitude that the overflow line could not accommodate the resulting flow.
Social and economic considerations militate in plaintiffs' favor. The offending valve was in a French Quarter building which the owners rented to others. An owner of such prime property is capable of absorbing the cost of premises risk by distributing them to lessees in the form of rent. Compare Entrevia v. Hood, 427 So.2d at 1150, which considered the social and economic value of imposing upon the owner the responsibility of restoring an isolated, unproductive, rural property.
We distinguish King of Hearts, Inc. v. Wal-Mart Stores, Inc., 27,137 (La.App. 2 Cir. 8/23/95), 660 So.2d 524, cited by defendants for the proposition that the valve was not a structural defect which constituted an unreasonable risk of harm. A commode in Wal-Mart backed up during a flood and the water damaged a neighboring rental business. The court held that although Wal-Mart had custody of the commode, plaintiff did not prove the commode was defective.
We conclude that the risk of harm presented by the valve was unreasonable.
The third element under Art. 2317 is causation. The evidence shows that the valve failure damaged Small's rental premises and three Sehring paintings. Testimony and photographs of the studio depict a soaked wall and floor. Sehring's paintings were clearly damaged, corroborating the testimony of several witnesses.
Impastato's succession, through its executrices, had garde of the toilet tank valve which presented an unreasonable risk of harm under the circumstances and caused damage. Therefore, those defendants are strictly liable under Art. 2317. Accordingly, we pretermit discussion of La. C.C. arts. 660, 667, 2392, 2693 and 2695.

Exception of No Right of Action
In Maggiores' answer to the appeal the executrices and First Financial reurge the exception of no right of action as to Small because she does not own the Sehring paintings. In her opposition to the exception Small argues that she has an interest in claiming damages for Sehring's paintings because Sehring verbally authorized her to sue on his behalf.
An action can be brought only by a person having a real and actual interest *245 which he asserts. La. C.C.P. art. 681. The exception of no right of action questions whether the party against whom it is asserted has an interest in judicially enforcing the right alleged. Touzet v. V.S.M. Seafood Services, Inc., 96-0225 (La.App. 4 Cir. 3/27/96), 672 So.2d 1011, 1012. An incorporeal right may be assigned for purposes of collection. La. C.C.P. art. 698.
Small had the Sehring paintings on consignment and would have earned a commission if they sold. Sehring owned the paintings. There is no evidence that Sehring assigned his right of action to Small.
Cases which allow a consignee to sue for the lost or damaged goods involve freight carriers (specialized law) and are distinguishable. Williams-Richardson Co., Ltd. v. New Orleans & N.E.R. Co., 165 La. 33, 115 So. 358 (1927); C.H. Rice & Son v. Payne, 151 La. 949, 92 So. 395 (1922). We have not found a case which decides the consignee's right to sue under similar facts, and Small has not cited one. Based on Arts. 691 and 698 we conclude that Small does not have an interest in the damaged paintings.

Prescription
Defendants' answer to the appeal reurges the exception of prescription as to Sehring's claim. The leak occurred May 22, 1990 and Sehring was added as a plaintiff March 30, 1992. The issue is whether that amendment relates back to the date the original petition was filed.
An amendment adding or substituting a plaintiff should be allowed to relate back if (1) the amended claim arises out of the same conduct, transaction or occurrence set forth in the original pleading; (2) the defendant knew or should have known of the existence and involvement of the new plaintiff; (3) the new and old plaintiffs are sufficiently related so that the added or substituted party is not wholly new or unrelated; (4) the defendant will not be prejudiced in preparing and conducting his defense. Giroir v. South Louisiana Medical Center, 475 So.2d 1040, 1044 (La.1985); Lirette v. Feagin, 95-1997 (La.App. 4 Cir. 1/19/96), 667 So.2d 1196. See also La. C.C.P. art. 1153.
Sehring's claim arises from the same circumstances alleged in Small's original petition. The Maggiores knew of Sehring, evidenced by their exception of no right of action against Small. The evidence to defend the action by Small was the same as that to defend the action by Sehring, and defendants were not prejudiced in their defense. Evidence of the relationship between Small and Sehring is limited to the consignment agreement. We conclude that the amended petition adding Sehring as a plaintiff relates back to the date of Small's original petition and his claim did not prescribe.

Damages
Sehring argues that his paintings were totally destroyed, cannot be restored and were collectively worth $150,000 when they were damaged in 1990. The Maggiores and First Financial argue that Sehring failed to mitigate damages by restoring the paintings.
The value of the undamaged paintings provided by various witnesses is disparate. Significant conflict in testimony concerns whether and the degree to which the paintings can be restored.
Sehring is an internationally renowned artist and has sold paintings around the world.
The estimated values for the undamaged painting entitled "Moments of Childhood" range from $30,000 to $40,000; for "Moments of Dawn at Sunset" $30,000 to $54,095; for "Summer by the Sea" $30,000 to $60,000. Sehring provided the following values: $36,000 ("Moments of Childhood"), $54,095 ("Moments of Dawn at Sunset"), and $35,000 to $40,000 ("Summer by the Sea"). Gallery director Judith Proctor estimated the undamaged value at $30,000 ("Moments of Childhood" and "Moments of Dawn at Sunset") and $30,000 to $60,000 ("Summer by the Sea"). Dr. Thomas Baher *246 testified that the undamaged value is $40,000 (each, "Moments of Childhood" and "Summer by the Sea") and $50,000 ("Moments of Dawn at Sunset").
The estimated values have a wide range and it is impossible to exact a figure with certainty. We feel that $120,000 is a reasonable composite based on the various experts' opinions on the undamaged paintings.
The paintings reveal stain water marks on the back of each canvas. Paint has flaked off of each work, particularly across the bottoms.
Sehring explained that the paintings are primed with a water-based rabbit skin glue which deteriorates when wet. He said the damage is irreversible and continues for years after the initial water exposure. As oil paint "cures" on the damaged primer, the paint shrivels and flakes off of the canvas. It takes eleven to fourteen years for oil paint to cure, so flaking can increase with time. Sehring said that placing a restored painting on the market would risk his international reputation.
Judith Proctor is an expert in the field of art, though not restoration. She examined the paintings in May 1991, then in May 1996 (at trial) when she noticed increased damage. She explained that the rabbit skin glue swells when wet and causes the paint to flake. She said the only thing that would have stopped the damage is "completely realigning the painting" (a restoration technique), after which the painting "is no longer Mr. Sehring's painting." In Proctor's opinion the damaged paintings are worthless as long as the artist is alive, although the paintings may have aesthetic value to someone. She explained that the value of art generally increases after the artist is deceased.
Dr. Baher has a Masters degree in art history. He testified that the value of a restored painting is about the same as that of an unrestored painting due to damage. He did not present the values. He said that if the artist used water based pigments the damaged paintings are "very near worthless;" if none of the materials are vulnerable to water the damaged paintings might have retained thirty to fifty percent of their value.
Artist June Lamp said in 1990 that the paintings lost their value and could not be restored as long as the original artist is living. She testified that restoration does not guarantee against further damage. Lamp is an art restorer but has not restored water damaged paintings.
Richard White, expert in art restoration including fine art damaged by water, testified that the paintings can be successfully restored. He said restoration involves "aligning" the painting, i.e., attaching a canvas to the back of the existing canvas, a treatment which "re-adheres all the paint and stops all flaking." After the paint is stabilized, the restorer fills and retouches the paint. White said that type of restoration can be guaranteed for at least 100 years. The cost to restore one painting in 1990 was about $850, in 1996 about $1,100. White said the painting should be restored quickly to prevent further damage. He admitted that he has not restored a living artist's work. He did not provide the values of the restored paintings.
The evidence establishes that the paintings cannot be restored to their original condition. However, they can be restored and guaranteed against flaking for at least 100 years. We recognize that the value of fine art often endures over time and we appreciate Sehring's concern about his reputation as an artist. However, we cannot ignore White's testimony that restoration is possible.
We conclude that the paintings lost fifty percent (50%) of their $120,000 original value. Therefore, Sehring's damages are $60,000.
In the consolidated case Lafayette Insurance claims that defendants are liable for the $11,814 which it paid to Small.
Subrogation is the substitution of one person to the rights of another. La. C.C.P. art. 1825. When subrogation results *247 from a person's performance of the obligation of another, that obligation subsists in favor of the person who performed it, and that person may avail himself of the original obligee's action against the obligor. La. C.C.P. art. 1826.
The Lafayette policy provides:
I. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US
If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them....
Lafayette introduced two estimates of the property damage to Small's gallery. Jay Daussin, Claims Supervisor for Lafayette, identified a $26,564.95 estimate which Small's counsel submitted to Lafayette. Daussin identified an estimate prepared by Gulf Coast Construction, Inc. for Lafayette in the amount of $9,723.66. Daussin testified that he adjusted each estimate and calculated a cash value loss (pursuant to the policy) of $14,897.71. Daussin deducted a 26% penalty because Small did not meet her co-insurance under the policy, added $1,755.00 for a rug ("contents"), subtracted a $1,000 deductible, and set $11,813.57 as the amount due.
Lafayette tendered $11,813.57 and Small negotiated the check "in full settlement of all claims." The evidence establishes that defendants are liable to Lafayette Insurance Company for that amount.
Small claims she is entitled to compensation for damage to the premises. It is not clear whether she claims the total amount due (including that paid by Lafayette) or a remaining interest.
When subrogation has occurred, the obligation is extinguished for the original obligee. La. C.C.P. art. 1826. However, the original obligee who is paid only in part may exercise a right for the balance of the debt. Id. Thus, where subrogation is proven the plaintiff may recover only his remaining interest in the partially subrogated claim. Sutton v. Lambert, 94-2301, p. 15 (La.App. 1 Cir. 6/23/95), 657 So.2d 697, writ den. 95-1859 (La.11/3/95), 661 So.2d 1384; Murray v. Sapp, 573 So.2d 495, 498 (La.App. 1st Cir.1990). See also La. C.C.P. art. 1826, comment (e).
Small did not submit evidence that a balance is due. However, evidence submitted by Lafayette shows a loss to Small of $4,839.14 ($1,000 deductible plus the co-insurance penalty of 26% of the actual cash value). Thus, we award $4,839.14 to Small.
Small and Sehring claim damages for mental anguish. The record does not support that claim.

Conclusion
The trial court did not err by not instructing the jury on La. R.S. 37:1367 and the jury's finding on negligence is subject to manifest error review. The record supports the jury's finding that defendants were not negligent.
The trial court erred by not instructing the jury on strict liability under La. C.C. art. 2317. The record establishes that defendants had garde of the valve, the valve contained a condition which presented an unreasonable risk of harm to plaintiffs, and that risk caused damages. Defendants are strictly liable.
Small has no right of action for damages to paintings which she did not own.
We reverse the judgment of the trial court.
Judgment is rendered in favor of Aldolf Sehring for Sixty Thousand Dollars ($60,000.00) and Lillian Schon Small for Four Thousand Eight Hundred Thirty-Nine 14/100 Dollars ($4,839.14) and against the Succession of Impastato through its executrices and First Financial Insurance Company.
REVERSED AND RENDERED.

REHEARING GRANTED IN PART
Lafayette Insurance Company's Motion to Amend Judgment in Conformity with *248 Court's Opinion is hereby converted to an application for rehearing which was timely filed.
Rehearing is granted solely to revise the decree to render judgment against defendants in favor of Lafayette Insurance Company to confirm with this Court's opinion. Rehearing is otherwise denied.
This Court's opinion is amended to provide:
IT IS ORDERED, ADJUDGED AND DECREED that the judgment of the trial court is reversed. Judgment is rendered in favor of Aldolf Sehring for Sixty Thousand Dollars ($60,000.00) and Lillian Schon Small for Four Thousand Eight Hundred Thirty-Nine 14/100 Dollars ($4,839.14) and against the Succession of Impastato through its executrices and First Financial Insurance Company. Judgment is rendered in favor of Lafayette Insurance Company for Eleven Thousand Eight Hundred Thirteen 57/100 Dollars ($11,813.57) and against the Succession of Impastato through its executrices and First Financial Insurance Company.
NOTES
[1] The First Financial policy was not admitted into evidence.
[2] The trial court signed the original judgment on May 23, 1996 dismissing the claims by Small, Sehring, Aldolf Sehring Studio and the Maggiores' third party demand. An amended judgment was signed on June 18, 1996 dismissing Lafayette Insurance Company's claim.
[3] Art. 2317.1 provides:

The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.
Art. 2322 provides:
The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice or defect in its original construction. However, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known of the vice or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care....