CONNIE COUVILLON AND JOHN M. COUVILLON

\*  NO. 2023-CA-0076

\*

VERSUS

COURT OF APPEAL

\*

UNIVERSITY MEDICAL CENTER MANAGEMENT CORPORATION D/B/A INTERIM LSU PUBLIC HOSPITAL, INTERIM LSU PUBLIC HOSPITAL, AND STATE OF LOUISIANA, BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AGRICULTURAL AND MECHANICAL COLLEGE ON BEHALF OF LSU HEALTH SCIENCE CENTER, ET AL.

FOURTH CIRCUIT

\*

STATE OF LOUISIANA

\* \* \* \* \* \* \*

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2019-06653, DIVISION "G-11"
Honorable Robin M. Giarrusso, Judge
\* \* \* \* \* \*
**Chief Judge Terri F. Love**
\* \* \* \* \* \*

(Court composed of Chief Judge Terri F. Love, Judge Joy Cossich Lobrano, Judge Tiffany Gautier Chase)

**LOBRANO, J., DISSENTS AND ASSIGNS REASONS**

John W. Redmann
Edward L. Moreno
Kelly S. Rizzo
LAW OFFICE OF JOHN W. REDMANN, LLC
1101 Westbank Expressway
Gretna, LA 70053

    COUNSEL FOR PLAINTIFFS/APPELLANTS

John K. Nieset
P. Ryan Plummer
CHRISTOVICH & KEARNEY, LLP
2300 Pan American Life Center
New Orleans, LA 70130-6078

COUNSEL FOR DEFENDANT/APPELLEE

**AFFIRMED**
**NOVEMBER 2, 2023**

This matter arises from a personal injury action involving the trial court's grant of summary judgment in favor of Defendant/Appellee TK Elevator Corporation ("TKE").  Plaintiff Connie Couvillon filed a petition for damages against LSU Medical Center ("UMC") for injuries received as she entered its parking garage elevator ("the elevator").[1]  Thereafter, a supplemental petition was filed against TKE in its capacity as the maintenance contractor for the elevator. The petitions alleged that the trip and fall accident happened because the elevator was uneven with the floor of the parking garage.  Mrs. Couvillon's husband and adult children were substituted as party plaintiffs ("Appellants") when she died several months after the accident of unrelated causes.

TKE argued in its summary judgment motion that Appellants could not meet the necessary elements to recover in negligence against TKE because the undisputed facts showed that TKE performed adequate monthly maintenance on the elevator; TKE had no notice of pre-accident or post-accident leveling problems with the elevator; and TKE did not have to make any repairs as a result of the

---

[1] UMC has four elevators in the parking structure, known as PS-A, PS-B, PS-C, and PS-D. UMC identified the elevator involved in Mrs. Couvillon's accident as PS-A.  For purposes of this opinion, the PS-A elevator will be referenced as "the elevator."

1

accident. On appeal, Appellants contend that the trial court erred in granting summary judgment because genuine issues of fact and law remain as to whether TKE breached its duty of care, TKE's receipt of notice, and whether Appellants were afforded adequate time to complete discovery.

Upon *de novo* review, we find that TKE met its duty of care in the performance of its maintenance services under the contract with UMC; that TKE did not receive notice of any un-leveling issues with the elevator prior to the fall; and that Appellants had adequate time to complete discovery. Accordingly, the judgment is affirmed.

## FACTUAL AND PROCEDURAL HISTORY

On November 28, 2018, Mrs. Couvillon, her husband, and her grandson, returned to the UMC parking garage elevators after she had completed an appointment. As she entered the elevator, she fell forward. Mrs. Couvillon was diagnosed with broken bones in both shoulders. Julia Nelson, UMC's Public Safety Officer, was called to the scene and took a report of the accident. The Couvillons attributed the fall to a three-to-four inch misalignment between the parking garage floor and the floor of the elevator.

Mrs. Couvillon initially filed suit against UMC on June 25, 2019. TKE was added as a named defendant on May 14, 2021, after UMC's discovery responses revealed that it had a contract for elevator repair with TKE. TKE filed its motion for summary judgment on October 18, 2022.

In support of the motion, TKE relied on the deposition testimonies of Brad Groce,[2] the TKE mechanic who serviced the elevator; Carey Becker, UMC's Assistant Vice President for Facilities and Support Services and its designated Art.

---

[2] Mr. Groce was no longer employed by TKE at the time of his deposition.

2

1442 corporate representative;[3] and Officer Nelson, UMC's Public Safety Officer. TKE also introduced the elevator's Account History Report into evidence. TKE maintained that Mr. Groce's testimony conclusively established the following: (i) TKE offered monthly maintenance service to the UMC elevators; (ii) Mr. Groce had no personal recollection of any complaints or any calls to service the elevator for any type of leveling problems before the incident; (iii) the elevator returned to normal service without any repair work from TKE; and (iv) Mr. Groce verified that the Account History Report did not show any "call-back" service calls for the elevator for twelve months before the accident and six months thereafter for any leveling issues involving the elevator.

TKE highlighted that UMC employees—Mr. Becker and Officer Nelson— also testified that they had no knowledge of any leveling problems with the elevator. Mr. Becker specifically testified that he had no recollection of any UMC elevators requiring service because they were un-level. As to Officer Nelson, TKE stressed that her testimony established that she did not personally observe that the elevator was uneven with the floor of the parking garage on the accident date; she had never seen the parking garage elevators open and be uneven with the floor in the four or five years she had worked at the hospital; she had not previously responded to a complaint where someone was injured by the elevator; and she wrote in her notes that the elevator was uneven on the accident date only because "that's what they had said." Accordingly, TKE argued that these depositions and the Account History Report conclusively showed that it did not breach any duty of care owed such that Appellants not only failed to establish an identifiable defect in

_____

[3] Mr. Becker testified that UMC's Facilities Management Department encompasses its Maintenance Department.

3

the elevator, but they also presented no proof that TKE had notice of a defect at any time before the accident occurred.

Appellants countered that summary judgment was not appropriate based on Mr. Couvillon's deposition testimony that the elevator was defective because of unevenness and the photographs of the elevator taken by the Couvillons' son-in-law on the accident date which allegedly depicted this unevenness.[4]  Appellants also contended that TKE had not produced records generated by its software programs—Intelligent Management Software ("IMS") and TechConnect, discussed *infra*.  According to Appellants, these records arguably could dispute TKE's claim that it lacked notice of leveling defects.  Appellants further maintained that they needed additional discovery from UMC, in particular, the deposition of Jessica Wright, the Service Center Assistant for UMC's Maintenance Department, whose job responsibilities entailed calling TKE to report elevator malfunction complaints.

In granting TKE's summary judgment, the trial court emphasized that Appellants failed to show that TKE had prior notice of any defect involving the misalignment of the elevator.  In response to Appellants' claim that TKE had not produced all of its records associated with its software programs, the trial court stated that it "[didn't] buy the software issue" argument.  As to Appellants' request for time to complete additional discovery of UMC representatives, the trial court made the following observations:

THE COURT:

> And I -- you know, this is a 2019 case and we're in 2022.
> I mean, to not have UMC's records at this point is a little
> - - I just - - well, anyway, I'm going to grant summary
> judgment.

---

[4] TKE contests that the picture conclusively establishes any unevenness.

Appellants thereafter timely filed a devolutive appeal from the judgment.

## SUMMARY JUDGMENT

Appellate courts review a judgment granting or denying a motion for summary judgment *de novo*, utilizing the same criteria considered by district courts to determine if summary judgment is appropriate—whether there is a genuine issue of material fact and whether the mover is entitled to summary judgment as a matter of law. *See Puderer v. Hilcorp Energy Co.*, 2020-0383, p. 6 (La. App. 4 Cir. 3/24/21), 315 So.3d 348, 352 (citations omitted). A fact is material if its existence or nonexistence is essential to plaintiff's theory of recovery. *See Edgefield v. Audubon Nature Inst., Inc.*, 2017-1050, p. 5 (La. App. 4 Cir. 3/27/19), 267 So.3d 738, 742. "After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3).

The burden of proof on a motion for summary judgment rests with the mover. La. C.C.P. art. 966(D)(1). Notwithstanding, "if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden . . . does not require him to negate all essential elements of the adverse party's claim, action, or defense;" instead, the mover need only "point out to the court the absence of factual support for one or more elements essential to the adverse party's claim action, or defense." *Id.* The burden of proof then shifts to the adverse party to "produce factual support sufficient to establish the existence of a genuine issue of material or that the mover is not entitled to judgment as a matter of law. *Id.*

5

**ASSIGNMENTS OF ERROR**

Appellants' assignments of error maintain that (1) the trial court erred in granting the motion for summary judgment in open court and in written judgment on the same date; (2) the trial court erred in granting summary judgment, finding no genuine issues of material fact in dispute and finding that TKE was entitled to summary judgment as a matter of law; (3) the trial court erred in granting TKE's summary judgment motion on the grounds that there was no evidence of prior notice; (4) the trial court erred in requiring Appellants to prove notice of a defect to TKE when discovery was incomplete and maintenance services records were missing; and (5) the trial court erred in not granting a continuance of the motion for summary judgment so that the parties could complete adequate discovery. We find these errors essentially fall within two categories (i) whether the trial court erred in granting summary judgment because genuine issues of fact and law exist as to whether TKE breached its duty of reasonable care, and (ii) whether summary judgment was premature because Appellants were not afforded adequate time to complete discovery.

**LAW/DISCUSSION**

***Genuine Issues of Fact /Law; TKE's Duty of Reasonable Care***

In the present matter, the parties do not dispute that TKE had a contract with UMC to maintain its elevators.[5]  The contract provided, in part, for TKE "to regularly and systematically examine, clean, lubricate—and adjust all 'Elevator Equipment' and to "service the equipment described in [the] Agreement on a regularly scheduled

_____

[5] TKE assumed the maintenance contract that had previously been entered between UMC and Carson Elevator.

basis . . . ."

Pursuant to La. C.C. art. 2315,[6] the elevator maintenance contractor owes a duty of care in the performance of its contractual obligations. *See Robinson v. Otis Condominium Ass'n, Inc.*, 20-359, p. 3 (La. App. 5 Cir. 2/3/21), 315 So.3d 356, 359. To prove negligence in an action against an elevator maintenance contractor, the plaintiff must show that the contractor breached its duty to exercise reasonable care in the performance of its duties under the contract and that the contractor's conduct was the cause in fact of the resulting injury. *See Rabito v. Otis Elevator Co.*, 1993-1001, p. 1 (La. App. 4 Cir. 12/15/94), 648 So.2d 18, 19. Actual or constructive notice is required to determine whether a repairer exercised reasonable care to discover and remedy a defect. *See Spott v. Otis Elevator Co.*, 601 So.2d 1355, 1362 (La. 1992), which found no negligence on the part of an elevator company where there were no reports of the elevator having malfunctioned before or after the alleged incident.

Here, Appellants contest whether TKE met its duty to exercise reasonable care in discovering and correcting a condition that was in need of repair. Appellants maintain that genuine issues of fact exist regarding the work performed on the elevator prior to Mrs. Couvillon's fall. Appellants note that Mr. Groce, TKE's technician, did not recall the precise work done on the elevator in his November 5, 2018 visit, which was three weeks prior to the fall. Appellants point out that although Mr. Groce admittedly used TKE's IMS and TechConnect software programs to diagnose, repair, and report any work performed on the elevator, TKE had nonetheless failed to produce repeated requests for work records

---

[6] La. C.C. art. 2315(A) provides that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."

generated by IMS or TechConnect. Appellants assert that this failure to produce raises questions as to whether the software programs functioned properly, the nature of any problems detected, and the scope of the repairs or work performed. As such, Appellants aver that TKE has not met its burden of proof to show it exercised reasonable care to discover the alleged un-leveling defect.

In opposition, TKE argues the deposition testimony of Mr. Groce shows that TKE satisfied its duty to use reasonable care in the performance of its contractual duties. TKE notes that Mr. Groce testified that he provided monthly preventative maintenance on the UMC elevators and responded to UMC call-backs of reported elevator problems. In terms of the monthly services for preventative maintenance, Mr. Groce explained that he utilized IMS, a TKE software program that is installed into the elevator's controller. The program generates codes to inform the repair person of potential issues with the elevator that may require maintenance. TKE clarified that the codes serve as a guide for the mechanic to consider in the maintenance of the elevator. The mechanic is not required to keep a record of the codes; and moreover, once the mechanic finishes with maintenance, the mechanic clears the codes to permit the input of new diagnostic codes regarding the elevator's status for the next maintenance visit. Mr. Groce testified that no records are kept on the routine monthly preventative maintenance services. TKE also averred that the IMS software program does not issue printouts of the codes.

As to TechConnect, Mr. Groce explained that it is a program used to notate the shut-down of an elevator for repairs in response to call-backs. The TechConnect program allows the mechanic to enter information on his smart phone to document the repair work done. The information from TechConnect is stored electronically and is printed in a format designated as the Account History

8

Report. TKE attested that it submitted the elevator's Account History Report(s) in response to Appellants' subpoena duces tecum and that the reports documented no reported history of elevator mis-leveling issues twelve (12) months before and six (6) months after Mrs. Couvillon's fall.

In reviewing the record in its totality, we find no genuine issue of material fact or law to dispute that TKE satisfied its duty as the elevator maintenance company to maintain and inspect the elevator. Appellants offered no expert testimony evidence to show that TKE's monthly maintenance of the elevator and its response to call-backs fell below the duty of care owed by TKE in the performance of its contractual obligations. Appellants have also presented no countervailing evidence that TKE knew or, in the exercise of reasonable caution, should have known of any alleged misleveling defect with the elevator. Instead, the uncontested facts establish that TKE had no prior knowledge of any misleveling issue with the elevators. Accordingly, Appellants' argument that fact or law issues remain as to whether TKE breached its duty of care to discover/and or correct the alleged misleveling defect lacks merit.

### Adequate Discovery

Appellants' argument that summary judgment was prematurely granted because they were not given adequate time to complete discovery hinges primarily on their claims that TKE has not responded to their request to produce documentation generated by its IMS and TechConnect software programs relevant to the elevator's maintenance and the need to take the deposition testimony of UMC employee, Jessica Wright.

La. C.C.P. art. 966(A)(3) states that "[a]fter an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion,

9

memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." In construing the article, "[a]lthough the language of article 966 does not grant a party the absolute right to delay a decision on a motion for summary judgment until all discovery is complete, the law does require that the parties be given a fair opportunity to present their case." *Varnado v. 201 St. Charles Place, LLC*, 2022-0038, p. 6 (La. App. 4 Cir. 6/29/22), 344 So.3d 241, 247 (citation omitted). In further construing the article's intent, the *Varnado* Court noted that "[u]nless plaintiff shows a probable injustice a suit should not be delayed pending discovery when it appears at an early stage that there is no genuine issue of fact." *Id.*, 2022-0038, p. 6, 344 So.3d at 248 (citation omitted).

The trial court has the discretion to hear a motion for summary judgment or grant a continuance when addressing an adequate discovery claim. *Roadrunner Transportation Sys. v. Brown*, 2017-0040, p. 11 (La. App. 4 Cir. 5/10/17), 219 So.3d 1265, 1272. The standard of review to evaluate the trial court's decision is the abuse of discretion standard. *Id.* Our jurisprudence has identified the following four factors for courts to consider in reviewing an adequate discovery claim:

(i) whether the party was ready to go to trial,

(ii) whether the party indicated what additional discovery was needed,

(iii) whether the party took any steps to conduct additional discovery during the period between the filing of the motion and the hearing on it, and

(iv) whether the discovery issue was raised in the trial court before the entry of the summary judgment.

*See Varnado*, 2022-0048, pp. 6-7, 344 So.3d at 248.

10

As more fully discussed herein below, in applying these factors, we determine that the trial court did not abuse its discretion and prematurely grant summary judgment without providing Appellants an adequate opportunity to conduct discovery.

Trial Readiness

In reviewing the question of trial readiness, we first note that this matter had been pending for over three (3) years at the time the parties agreed to a Trial Order on October 18, 2022, to select a trial date.[7]  Appellants' discovery cut-off date in the Trial Order was March 3, 2023.  TKE filed its motion for summary judgment on the same date as the Trial Order.

Although the Trial Order indicated that discovery was not complete, Appellants had taken the depositions of UMC's  Officer Nelson, Mr. Groce, TKE's mechanic, and Mr. Becker, UMC's 1442 corporate deposition representative, and submitted multiple sets of written discovery demands to UMC and TKE each by the time of argument on the summary judgment motion.  The record supports that TKE responded to Appellants' fourth set of discovery requests to produce copies of any diagnostic tests and results run through the IMS software program[8] in

---

[7] The parties had selected April 11, 2023, as the date to set a trial date.

[8] TKE responded to Appellants' fourth set of discovery demands as follows:

REQUEST FOR PRODUCTION NO. 21

> Please produce a copy of any and all diagnostic tests and results, run through the Intelligent Management System software, performed by TKE on the elevator in the parking structure at University Medical Center of New Orleans—LCMC Health where this incident occurred (also known as PS-A) for the years 2017, 2018, and 2019.

RESPONSE TO REQUEST FOR PRODUCTION NO. 21:

September 2022,[9] and UMC responded to Appellants' third set of discovery requests to provide Jessica Wright's last known contact information on November 10, 2022. Pursuant to the Trial Order, Appellants submitted their Witness List on October 28, 2022.

Upon considering the scope of the discovery conducted to date and the parties' agreement that this matter was, at minimum, in a posture to select a trial date, we find that the trial readiness factor did not preclude the trial court's grant of summary judgment.

Additional Discovery

Appellants identified the need to obtain a complete response from TKE regarding Appellants' request for production of documents generated by TKE's IMS and TechConnect software programs and time to depose UMC's Jessica Wright regarding any reported elevator problems to TKE as outstanding discovery that required completion prior to consideration of summary judgment.[10] Neither argument is persuasive.

With reference to the software programs, Appellants have offered no evidence to refute TKE's uncontested attestations that the IMS program does not

---

> TKE objects to the wording of this Request. To clarify, the IMS software does not perform diagnostic tests. Rather, it continually monitors certain aspects of the elevator system. Certain conditions in the system can be logged as codes to be read by a suitably equipped mechanic during the course of maintaining the elevator. Once read by the mechanic, the mechanic can—and usually does—clear the log of these codes. TKE is unable to retrieve any codes that might have been logged on the subject elevator during the time period specified by this Request.

[9] The certificate of service from TKE's counsel certifies that service was made in September 2022; however, the date of service was left blank.

[10] Sylvia Weber was identified as the other UMC employee who notified TKE of elevator problems. However, Appellants reference only Ms. Wright in their appellate brief as the UMC employee they required additional time to depose.

generate data and that the Account History Report(s) previously produced to Appellants encompassed any TechConnect records generated. In contrast, TKE has cited Mr. Groce's deposition testimony,[11] which bolsters its claims that the IMS and TechConnect programs were TKE's proprietary tools/company devices and not separate corporate entities; that the IMS program did not generate records; and that the "account history stuff" regarding repairs made resulted from notations entered into the TechConnect system from the company I-phone. Moreover, the trial court implicitly found that TKE had adequately responded to Appellants' request for any software documentation when it "did not buy the software" argument. Hence, inasmuch as the uncontroverted facts show that the records requested by Appellants do not exist or have been produced, we find that Appellants' need for additional discovery regarding the software programs is moot.

As to the need for more time to depose Jessica Wright, Appellants contend that they did not realize this need until they took the depositions of Mr. Groce and Mr. Becker "and learned that TKE was not producing any information responsive to Plaintiffs' requests." Again, the facts in the record undermine this claim. The record shows that Mr. Groce's deposition was taken on May 11, 2022, and Mr. Becker's deposition took place on September 7, 2022. Ms. Wright's role in reporting elevator maintenance issues was a subject of Mr. Groce's deposition. In his deposition, Mr. Groce identified Ms. Wright as one of two ladies who called TKE if there were any complaints. He identified Ms. Wright from TKE's Account History Report documents that had been produced to Appellants prior to

_____

[11] Appellants introduced portions of Mr. Groce's and Mr. Becker's deposition testimonies into evidence at the summary judgment hearing.

Mr. Groce's deposition. [12]  Similarly, Mr. Becker testified that after a report of an elevator's malfunctioning was made to UMC's Maintenance Department, "Jessica or Sylvia would call ThyssenKrupp and report the issue."  Mr. Becker verified that the Maintenance Department did not keep a log of reported elevator problems; and as previously referenced, he had no knowledge of any reported leveling problems with the elevator or any report made to TKE of leveling problems.  Hence, Appellants were aware of Ms. Wright's role in reporting elevator issues to TKE, at minimum, before Mr. Groce's May 2022 deposition, and Mr. Becker's deposition testimony in September 2022 only confirmed that role.

We further note that any impetus on Appellants' part to depose Ms. Wright as a means to possibly establish that TKE had prior notice of elevator un-leveling issues seems grounded in speculation or conjecture.  Appellants have produced no evidence to suggest that Ms. Wright's testimony could contradict UMC's and TKE's sworn claims of no reported elevator leveling issues.  "Proof which consists of mere speculation and conclusory and unsubstantiated allegations is not sufficient to overcome summary judgment."  *Puderer*, 2020-0383, pp. 12-13, 315

---

[12] The following exchange took place at Mr. Groce's deposition:

> Q.  Would you be notified in your ticket at all of the name of someone from UMC that reported a problem?
>
> A.  Sure.  There was two ladies at the time whose job it was to - - if someone in the hospital complained about anything, they were the girls who sat there and wrote the work orders . . . .  In our case they would just call ThyssenKrupp's answering service and report - - talk to ThyssenKrupp's dispatchers and that's where the process would start I would say.
>
> Q.  Do you recall what their names were?
>
> A.  They're all - - Jessica Simpson, I believe.  They're in there.
>
> Q.  Jessica Wright?
>
> A.  Jessica Wright, yeah, that sounds right.

So.3d at 355. The record supports that Appellants had sufficient time to notice the deposition of Ms. Wright before argument on the summary judgment to obtain objective proof to counter TKE's factual evidence that it utilized reasonable care and received no notice of leveling problems.

Accordingly, we find the trial court did not err in granting summary judgment because it did not consider Appellants' claim that they needed additional discovery from TKE and UMC.

<u>Additional Steps to Conduct Discovery; Discovery Issue Raised Before Entry of Judgment</u>

In considering the third and fourth factors of Appellants' adequate discovery argument, we recognize that Appellants' written opposition to summary judgment and their argument at the hearing asserted that TKE had provided incomplete discovery responses. Furthermore, we acknowledge Appellants' contentions that they had propounded additional discovery demands to UMC. However, other than discovery directed to UMC to obtain Ms. Wright's address, the record before us is devoid of the precise steps Appellants took to compel or produce responses to these additional discovery demands in between the time of the filing of the motion for summary judgment and argument on the motion. For example, the record contains no motion to compel or a rule for a discovery conference directed to TKE. As to UMC, Appellants did not introduce into evidence a copy of the alleged outstanding discovery demands directed to UMC or the date that they were submitted. Indeed, TKE asserts that Appellants issued last-minute additional discovery to UMC the day before the summary judgment hearing and that TKE owed no outstanding discovery at the time of the hearing. Appellants have offered no evidence to contradict TKE's assertions.

Appellants' arguments at the hearing did include that they wanted to complete additional discovery. However, Appellants failed to make an oral or a written request to continue the motion for summary judgment before entry of judgment. Consequently, the Appellants' lack of documentation as to the additional steps Appellants took to conduct discovery and their failure to formally request a continuance before the hearing or entry of judgment weigh against finding that the trial court deprived Appellants of a fair opportunity to conduct adequate discovery.

Upon application of all of the factors considered in evaluating an adequate discovery claim, we find no abuse of the trial court's discretion in its choice to hear the merits of TKE's motion for summary judgment, rather than to grant a continuance to allow for further discovery. Accordingly, this error lacks merit.

## CONCLUSION

Based upon our *de novo* review, no genuine issues of material fact or law remain regarding any breach on the part of TKE to use reasonable care in the performance of its contractual obligations to maintain the elevator and its lack of notice of any defect in the elevator prior to Mrs. Couvillon's fall. Moreover, we find the trial court did not abuse its discretion in rejecting Appellants' argument that summary judgment was premature because Appellants had not been given sufficient time to complete discovery.

Based on the foregoing reasons, the judgment is affirmed.

**AFFIRMED**